## JOHN CURRIER v. CONTINENTAL LIFE INS. CO. *

*Life Insurance. Husband has Insurable Interest in Life of Wife. Presumption. Receipt. Harmless Evidence. Profits.*

1. Where no fact is shown as to the wife, as that she was insane, or an invalid, the presumption is, that the husband has an insurable interest in her life.
2. The question being whether the plaintiff had paid a premium, and the defendant having issued a receipt for the same by order of a court of equity in New Hampshire; *Held*, that the receipt was sufficient proof of payment, and therefore, that it was immaterial whether the record of the proceedings in said court was properly authenticated or not.
3. A policy, indorsed with the words, "with profits," is sufficient proof that the plaintiff is entitled to profits, and the admission of other evidence to show the same fact, if error, was harmless.
4. The company is entitled to deduct an unpaid premium note from the amount of the policy.

ASSUMPSIT to recover upon a contract of life insurance, issued by the defendant upon the life of Sarah M. Currier for the benefit of the plaintiff. Plea, the general issue, tender, and offset. Trial by jury, September Term, 1883, REDFIELD, J., presiding. Verdict ordered for the plaintiff.

The policy was dated November 14, 1865. Sarah M. was the wife of the plaintiff, and her death occurred February 5, 1882.

It was conceded by the defendant, that the first four premiums of $572.70 each, payable by the terms of the policy on the 14th day of November, in the years 1865, 1866, 1867, and 1868, were seasonably paid by the said John Currier by his notes of those dates, each for the sum of $286.35,

---

* Heard, May Term, 1884.

payable to said defendant or order, and by his paying the balance of said several premiums in cash. To show the payment of fifth premium, payable November 14, 1869, the plaintiff offered in evidence a document purporting to be a copy of record of the Supreme Judicial Court in and for the county of Grafton, in the State of New Hampshire, in a suit in equity in favor of said plaintiff against said defendant, brought in 1871, in which said Currier claimed that he had paid the fifth annual premium on said policy by delivering the amount thereof in compliance with the written direction of an agent of the defendant to an expressman to be sent by express; and that the defendant denied said premium had been received, and refused to treat said policy as in force, and in which suit the defendant denied the claims of the plaintiff, and showed that said premium had been embezzled by said expressman, who it claimed was the agent of the plaintiff. But the court adjudged in said suit, that the policy was in force, and that said defendant should treat said policy as paid up in full, and give the plaintiff all such rights and privileges as by the rules and regulations are given to holders of paid-up policies, which said record purported to be certified by Charles B. Griswold as clerk of the Supreme Court of the State of New Hampshire for the County of Grafton, with the certificate of Isaac W. Hammond, Deputy Secretary of State, attached, that said record was attested in due form.

It appeared from the testimony of Mr. Hinkley, a witness for the plaintiff, and the agent who took the application for the policy, that when the application was taken, he represented to the plaintiff, that the defendant expected to make fifty per cent dividends on the table rates, but that there was no guaranty, or absolute promise, that any dividends would be paid. It also appeared by said Hinkley's testimony, that he had a policy in the defendant company for $2,000 on his life on the annual life rate; that he was about a year older than Sarah M. Currier; that he had

made a computation of the amount due on the plaintiff's policy; that in said computation he had allowed dividends in accordance with the statement of dividends received by the plaintiff, so long as they were received, and after that he had allowed dividends in the same proportion that he had received them on his policy, and that he had prepared a statement in which he had figured the amount of the notes given by the plaintiff to the defendant, and applied the dividend toward the payment of the notes. The plaintiff offered said statement in evidence, the admission of which, and all the testimony of said Hinkley in relation to said statement, computation, and dividend, was objected to by the defendant, but received, subject to all legal objections, to which ruling the defendant excepted.

It appeared from the testimony of Mr. Morley, the actuary of the defendant, a witness on the part of the defendant, that the defendant company was chartered in 1862, and commenced business in 1864; that it was chartered and did business as a stock company, and had a capital stock, and that under its charter it had the privilege of issuing, and had issued, policies with and without the right to participation in the profits of the company; that said company never authorized its agents to promise dividends, or make any representation in regard to dividends; that said company never determined on what basis to divide the profits until 1868. It also appeared, that on the settlement of the fifth annual premium of the plaintiff's policy in 1869, the defendants allowed a dividend of $87.50; that the plaintiff paid the interest on said notes given in part payment of premiums to November 14, 1870; and that since that date the principals and interest upon said notes had never been paid.

It also appeared in evidence that by the rules and regulations of said company no dividends or profits had been declared by the directors of said company, payable or applicable on policies when the holders thereof had not paid their

Currier *v.* Insurance Co.

notes or the interest on their notes which had been given in part payment of premiums, and no dividends or profits had been declared which were payable or applicable on the plaintiff's policy since 1869.

The receipt, referred to in the opinion of the court, was :

| Policy No. 478. | | Office of the CONTINENTAL INSURANCE Co., OF HARTFORD, CONN. |
|---|---|---|
| Annual premium, | $572 70 | |
| Dividend, | 87 30 | Hartford, Nov. 15, 1869. |
| | | Received (as per margin), the 5 annual payment |
| Cash portion of prem. | $485 40 | due Nov. 15, 1869, on policy No. 478, insuring the |
| Interest on notes, | 68 72 | life of Sarah M. Currier, until Nov. 15, 1870, but |
| | | this receipt shall not be valid unless payment is |
| Total cash due, | $554 14 | made, as stated in the margin hereof, at or before |
| | | noon of the day when due, and this receipt counter- |
| Received amount as above this | | signed by P. C. Headley, agent at Portsmouth, |
| 24th day of June, 1874. By | | N. H. |
| P. C. HEADLEY. | | ROBT. E. BEECHER, Secretary. |
| | | Issued pursuant to decree of S. J. Court of the |
| | | State of New Hampshire. |
| | | ROBT. E. BEECHER, Sec'y. |

*Charles W. Porter*, for the defendant.

The record of the New Hampshire court was not properly authenticated. Rev. St. U. S. s. 905; 103 Mass. 283; 1 Iowa, 1; 4 Wis. 45. The policy did not promise any dividends of profits, and no claim to them was alleged in the declaration. Hinkley's testimony was not admissible to vary the terms of the policy, or notes. Bliss Ins. s. 375; *Lamott* v. *Ins. Co.* 17 N. Y. 199; 40 N. J. L. 568; *Ins. Co.* v. *Mowry*, 96 U. S. 545. The plaintiff had no insurable interest in the life of his wife. Bliss Ins. p. 16. There is no estoppel because of Hinkley's representations. *Ins. Co.* v. *Mowry, supra; Durant* v. *Pratt,.*55 Vt. 272.

*S. C. Shurtleff*, for the plaintiff.

The question, whether the plaintiff had an insurable interest in the life of his wife, is not in the case. If there is any reason why the contract is void, the defendant must show it. The court will not presume it. But as the earnings of the wife belong to the husband, he has an insurable interest in her life. The plaintiff's evidence was admissible. *Brooks* v. *Phenix Life Ins. Co.* 8 Reporter, 774.

Currier *v.* Insurance Co.

The opinion of the court was delivered by

TAFT, J.  I.  After the testimony was closed, the defendant moved that a verdict be directed in its favor on the ground that the plaintiff had not proved an insurable interest in the life of his deceased wife, the said Sarah M. Currier.  The motion was denied.  The defendant insists, that the plaintiff had no insurable interest in the life of his wife, and that, therefore, the contract was against public policy and void. This objection would have come with more grace from the defendant, at the time it was asked to enter into the contract, and before the receipt of nearly three thousand dollars of the plaintiff's money.  As PARKER, Ch. J., said in the leading case of *Lord* v. *Dall*, 12 Mass. 115, where a like objection was made : " Nor can it be easily discerned why the underwriters should make this a question after a loss has taken place, when it does not appear that any doubts existed when the contract was made, although the same subject was then in their contemplation."

Admitting that the rule as to the interest necessary to support a contract of life insurance is, that the interest must be a pecuniary one, we think that where no facts are shown in relation to the wife, the presumption is, that the husband has an insurable pecuniary interest in her life.  He is entitled to her services.  There are many cases where she is the real support of her husband and family, or as is sometimes said, she is the "man of the house."  In all ordinary cases the husband has a deep interest in the continued life of the wife.  Cases may exist where the husband has no interest whatever in his wife's life.  She may be a burden,—a hopeless maniac, or invalid; and such facts may require the application of a different rule.  There are none such in this case; and we only hold that the presumption is, that the wife is a help-meet, and the husband has an interest of a pecuniary nature in her living.

II.  The defendant was entitled to five premiums on the policy in question.  The payment of four was conceded.

The company's receipt for the fifth was in evidence. (See statement of the case.) The payment as per the receipt was conceded. It was immaterial then whether the record of the proceedings in New Hampshire was properly authenticated or not. If the receipt was actually given, what difference does it make, whether it was given voluntarily, or as the result of a controversy ? There is no question of duress in the case, and we think the payment was shown by the receipt, and do not pass upon the question as to the record. That the company was compelled to give the receipt by decree of court does not change its force or effect.

III. The policy was issued, indorsed, with the words, " with profits," and by force of the indorsement the plaintiff was entitled to profits. Such being his right by the contract, the admission of parol testimony, with the prospectus and circulars, to show such right, if error, was harmless. The plaintiff was entitled to profits by the terms of his contract, without further testimony.

IV. The defendant had the right to deduct from the amount of the policy the sum due from plaintiff upon the notes given by him in part payment of the premiums. The only evidence of profit was that of the witness Hinkley; and as no question was made by defendant but that it was correct, if the plaintiff was entitled to profits, we perceive no error in the ruling of the court directing a verdict for the face of the policy with profits according to the Hinkley statement, deducting the amount of the plaintiff's notes, and its judgment is affirmed.