# Seigrist, Administrator of Seigrist, deceased. *versus* Schmoltz.

Where one neither a relative nor a creditor insures the life of another for his own benefit, even though it be in good faith and for the honest purpose of reimbursing him for the outlays which he may be called upon to make, under an agreement with the assured to support him during life, public policy will not permit him to retain out of the proceeds of the insurance more than sufficient to reimburse him for the support of the assured, the amount expended for the insurance and for all legitimate expenses including interest. The balance of the proceeds of the insurance belongs to the estate of the assured.

May 4th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Lebanon county:* Of January Term 1886, No. 80.

Assumpsit by William Seigrist administrator of the estate of Jacob Seigrist deceased, against John Schmoltz. Plea non assumpsit.

The following are the facts as they appeared on the trial of the case, before McPHERSON, J.

Jacob Seigrist, an old man of sixty-three years, during the early portion of the year 1879, came to B. W. Bennetch, residing near Richland, Lebanon county, Pa., and asked him whether he did not know somebody who would have his life insured in his (the stranger's) favor, and would support him after he was unable to work. Bennetch said that he would ascertain. He then talked with his father-in-law, John Schmoltz, Sr., the defendant, after which, at the instance of Schmoltz, Bennetch went to Jacob Seigrist and began to negotiate with him for Schmoltz, for a policy on his (Seigrist's) life, by ask-

ing Seigrist what he wanted out of the money to be secured in the policy. The negotiation resulted in an arrangement whereby a policy for $3,000 was to be taken out on Seigrist's life in favor of John Schmoltz as beneficiary. Of this $3,000, the sum of $2,800 was to be for the benefit of and paid to John Schmoltz, Sr., and $200 to pay the funeral expenses of said Jacob Seigrist after his death. It was also contracted at the same time between Seigrist and Bennetch for Schmoltz, that Schmoltz would keep Seigrist out of the poor house by providing for him after he was unable to earn a living, as long as the policy remained in force, or as the language of the policy has it, "$200 to pay the funeral expenses of said Jacob Seigrist: J. Schmoltz also agrees that Jacob Seigrist shall not become a pauper as long as this certificate is in force." Bennetch then returned to his father-in-law, the defendant, and reported to him the result of his negotiations with Seigrist, and the terms of the bargain, and as Bennetch testified, "and the old man (Schmoltz) agreed to do it." "Thereupon the application was made and the policy taken out," for $3,000, and John Schmoltz held the policy and paid all the assessments and dues thereon down to the time of Seigrist's death. Seigrist continued working and supporting himself nearly, if not fully, two years after the policy was taken out, when the man with whom he was staying, on complaining to Schmoltz that the old man was sick, and that his house was uninhabitable, secured from Schmoltz the loan of $300 on a mortgage with interest at the rate of six per cent. per annum, from his wife to Schmoltz, on a house which she bought with this money. The mortgage was not fettered or cumbered with any conditions, but was a simple security for the loan of money. After Seigrist's death and the payment of the insurance money to Schmoltz, he paid the mortgage with interest for one year—$318—in settlement of the claim for keeping Seigrist, and retained the balance of the $2,800. This $318 is the entire amount paid by Schmoltz, besides the premiums, out of the $2,800. Schmoltz was neither a relative nor a creditor.

The plaintiff presented *inter alia*, the following points:

2. The membership, in the Aid Society was the membership of Jacob Seigrist, and as such in the absence of an insurable interest in Schmoltz, he, Schmoltz, can and could take nothing under it except for advancements made thereon, and the surplus of the money received by him on the policy belongs to the estate of Jacob Seigrist, the insured. Refused. (Third assignment of error.)

4. The designation of John Schmoltz as beneficiary in the policy and the assignment to Emma Seigrist from the insured, both being unsupported by an insurable interest, other than as

a security for future advances and a debt of one hundred dollars, the transactions were speculative as to them; and the plaintiff in this case is entitled to recover, and the verdict of the jury must be in favor of the plaintiff and against the defendant for the surplus of the money received by the defendant on the policy, after deducting therefrom all advancements and payments by him made on the security thereof. Refused. (Fourth assignment of error.)

In the general charge the Court instructed the jury, *inter alia*, as follows:

In June, 1879, an application was made to the U. B. Mutual Aid Society for an insurance upon the life of Jacob Seigrist. In accordance with that application, the policy before me was issued. It is dated the 8th day of July, 1879, and it declares that Jacob Seigrist has become a member of the company, and that this membership entitles John Schmoltz, Sr., to $2,800,—$200 to pay funeral expenses of said Jacob Seigrist: J. Schmoltz also agrees that Jacob Seigrist shall never become a pauper as long as this certificate is in force." Following that are these words, " heirs or assigns,"—and what I have just read is in parenthesis,—" heirs or assigns, upon the death of said Mr. Jacob Seigrist to $3,000." [In other words, it is a policy of insurance for $3,000, of which $2,800 are to go to John Schmoltz, and $200 are to go to pay the funeral expenses of Jacob Seigrist. In addition there is an agreement contained therein, by which Mr. John Schmoltz agreed " That Jacob Seigrist should never become a pauper as long as this certificate is in force. Schmoltz accepted this certificate, and thereby assumed this obligation, namely:

The obligation to maintain Jacob Seigrist, and see that he did not become a pauper so long as this certificate is in force. The certificate remained in force until the death of Jacob Seigrist; and you have evidence here with regard to the way in which, and the extent to which, John Schmoltz fulfilled the obligation which was imposed upon him by this paper.] (Fifth assignment of error.)

[Now the question that we intend to submit to you is entirely a question of fact, namely: Whether or not this transaction was speculative in its character—whether it was so upon the part of Schmoltz—because that is the important question of course—whether it was upon the part of Schmoltz a speculation upon the life of Jacob Seigrist, or whether it was a *bona fide* transaction; a transaction entered into upon his part in good faith, upon good motives—charitable or benevolent motives—with a disposition to befriend the man, who seemed to need friends; to support a man who seemed to need support—whether, in other words, the transaction is free

from that taint which would make it void, namely: The taint of speculation.] (First assignment of error.)

If Mr. Schmoltz, out of proper and commendable motives, undertook to support this man, we say to you that in our judgment he had a right to insure his life for the purpose of reimbursing himself for the outlays which he might reasonably expect to be called upon to make; and we think this view is supported by a case which was cited upon the argument here, namely: The case of the Reserve Insurance Company against Kane, in which a son was allowed to insure the life of his father; and one of the grounds on which it was put was that he might be obliged to pay for the support of his father, or that there might be cast upon him in certain contingencies the duty of supporting his father; and that being so, he had a right to insure his father's life, and protect himself against the outlays which he, that is, the son, might be called upon to make.

\* \* \* \* \* \* \* \* \* \*

[I repeat briefly in conclusion, if you find that the transaction was in good faith, undertaken for the honest purpose of support, and that this policy was fairly taken out to reimburse Schmoltz for the outlays which at that time it was likely he would be called upon to make, then it is a good transaction, and the administrator of Seigrist cannot recover.] (Second assignment of error.)

Verdict for the defendant and judgment thereon, whereupon the plaintiff took this writ and assigned for error the refusal of his second and fourth points, and those portions of the general charge included within brackets.

*J. P. S. Gobin* and *Bassler Boyer*, for plaintiff in error.— It is not sufficient that the sale and purchase of a policy may have been in good faith and with correct motives. The mischiefs resulting from a sale of a policy for speculating on human life is so contrary to the policy of the law and so in conflict with the just principles of life insurance that it is unsafe to relax the rule that the holder of the property must have some pecuniary interest in the life of the person insured. Permitting the assignee to retain the sum he had paid to the person insured, and to the company with interest thereon, so far protected the assignee and enforced the rule based on public policy, as to give no just reason to complain: Downey *v.* Hoffer, 16 W. N. C., 185.

The insurable interest is that which existed at the time the insurance was effected, not that which may exist at the time of the death of the insured: Scott *v.* Dickson, 16 W. N. C., 182; Dalby *v.* Life Ins. Co., 15 C. B., 365.

The right to insure for future reimbursement or outlays is

[Seigrist, Adm'r, *v.* Schmoltz.]

different in the case of a stranger from that of a son, as in the case of Res. Mut. Ins. Co. *v.* Kane, 31 P. F. S., 155, which was quoted by Judge McPHERSON in his charge to the jury.

It was for the Court to say whether the transaction was speculative or not, instead of submitting it to the jury on a question of good faith: Moore *v.* Small, 7 Harris, 468; De France *et al. v.* De France *et al.*, 10 Casey, 390; Todd *v.* Campbell *et al.*, 8 Casey, 252.

Schmoltz, a stranger in every sense, could take this policy on the life of Siegrist only as security for payments and advancements made on the credit thereof. After these have been deducted, as contended for in our points to the Court, the balance under all the decisions of this Court from Gilbert *v.* Moose, 8 Out., 74, to Downey *v.* Hoffer's Admr., *supra*, was a portion of the estate of Jacob Seigrist.

*John Benson* and *Josiah Funck* (*Grant Weidman* with them), for defendant in error.—In Scott *v.* Dickson, 16 W. N. C., 181, it is held that, "The essential thing is, that the policy shall be obtained in good faith, and not for the purpose of speculating upon the hazard of a life in which the assured has no interest."

The policy in this case was in no sense wagering. It was given to a kind, charitable and benevolent friend to reimburse him for the money which he would be called upon to expend in supporting and maintaining the insured, and which established the relation of debtor and creditor, and created an insurable interest on the life of the deceased. This case is entirely different from the cases cited by the learned counsel for the plaintiff in error, and does not come within the ruling of the cases cited by them. In those cases the speculative and wagering character of the transactions is admitted, or at least not seriously controverted, and the principles laid down by the Court in them are not applicable in a case like the one in hand, and are no authority, and do not in the least affect this case.

The case expressly comes within the ruling of this Court in the Keystone Mutual Association *v.* Beaverson, 16 W. N. C., 188, and is directly in point and on all fours with this case, and rules it.

Mr. Justice GORDON delivered the opinion of the Court, October 4th, 1886.

John Schmoltz, the defendant below, who was named as the beneficiary in the policy on the life of Jacob Seigrist, being neither a creditor nor near relative of the assured, took no interest therein, except as hereinafter stated. The Court below

[Seigrist, Adm'r, v. Schmoltz.]

fell into the error of holding that the question was one of good faith on the part of the beneficiary. "Now," says the learned judge, in his charge to the jury, "the question that we intend to submit to you is entirely a question of fact, namely: Whether or not this transaction was speculative in its character; whether it was so on part of Schmoltz, because that is the important question. Whether it was on part of Schmoltz a speculation on the life of Jacob Seigrist, or whether it was a *bona fide* transaction—a transaction entered into on his part in good faith; upon good motives, charitable or benevolent motives; with the disposition to befriend the man who seemed to need friends; to support a man who seemed to need support; whether, in other words, the transaction is free from that taint which would make it void, namely: The taint of speculation."

But as we have intimated, the question is not one of good faith, but of public policy: Downey *v.* Hoffer, 16 W. N. C., 185. The intention of John Schmoltz in obtaining this policy may have been innocent and pure, but this cannot be regarded, for the fact remains that he was in no way interested to maintain the life of Jacob Seigrist, and it is certain, the sooner that life was extinguished the better it was, in a pecuniary point of view, for the beneficiary. Nor does it help the matter, but rather the contrary, that the defendant had charged himself with the support of Seigrist, for all the more would his pecuniary interest be advanced by the termination of Seigrist's life.

Doubtless, the defendant, having entered into an agreement for the maintenance of the insured, might take a policy on his life in order to protect himself to the extent of that charge, even as a creditor may insure his debtor to the extent of his debt, for in that case he would gain nothing by Seigrist's death, though he might not be interested to maintain his life.

It follows, that Schmoltz had an insurable interest in the life of Seigrist to the amount that he actually paid for his support, or which he advanced, in money, or otherwise, in fulfillment of his contract. So, in addition to this, would he be entitled to the money he expended in taking out and maintaining the policy; in other words, he must be fully reimbursed for all his legitimate expenses, including lawful interest, and for the balance the administrator is entitled to a judgment. As what we have said in effect sustains all the assignments of error, we need not consider them in detail.

The judgment of the Court below is reversed, and a new *venire* ordered.