## Chicago Guaranty Fund Life Society v. George A. Dyon.

1. INSURANCE—*Son's Insurable Interest on His Father's Life.*—The mere relationship of father and son does not give the son an insurable interest in the father's life. An insurable interest must be a pecuniary one in the continuance of the father's life.

2. PUBLIC POLICY—*Insurable Interests.*—Public policy forbids one

person, who has no interest in the continuance of the life of another, from speculating on that life by procuring a policy of insurance. The interest, in order to be insurable, must be pecuniary, not one of relationship or of love and affection.

Assumpsit, on a policy of life insurance. Trial in the Superior Court of Cook County; the Hon. PHILIP STEIN, Judge, presiding. Verdict and judgment for plaintiff. Appeal by defendant. Heard in this court at the March term, 1898. Reversed. Opinion filed December 6, 1898.

## STATEMENT OF CASE.

For some time prior to September 16, 1893, George Dyon, the father of appellee, held a policy of insurance upon his life in the Total Abstinence Life Association of America, the amount not shown by the record, in which his wife, Mary Ann Dyon, was named as the beneficiary. The policy was in force September 14, 1893, but George Dyon was financially embarrassed and unable to pay the premiums longer, and requested two of his sons, about that time, to carry the policy for him, as the witnesses express it. These two sons said they were unable to do so, and later, by the solicitation of an agent of appellant, who was re-insuring risks of the Total Abstinence Life Association, which was going out of business, appellee saw his father and made an arrangement to carry his father's policy in the appellant company. On this point appellee testified, viz.:

" I remember the witness, Mr. Yeomans. I first saw him at my house, just before this policy was issued. I saw him at my house twice. I do not remember the date of the first conversation. I remember the talk I had with him. He said 'I have been over to see your father in regard to carrying a policy in our company, and he told me he was not able to carry it, and referred me to you, and he said it would be all right. Your father said it was all right for you to take it and carry it for him,' and I told him, ' I can't do it without father's consent.' I says, ' If father wishes me to carry this policy, he can come over and see me in regard to it.' Mr. Yeomans says, ' Well, your father says he is coming over this evening and see you in regard to it, and I will be around again and take you down to our office.' ' Well,' I says, ' all right.' I saw my father after that at his house in the presence of mother."

" Q. Tell us fully the talk you had with your father before you saw Mr. Yeomans the second time. A. Well, I went over there in the evening to see father, and he told me that he sent Mr. Yeomans, the agent of this new company, the agent of the Chicago Guaranty Fund, over to see me to talk about this policy in that company. I told him ' Yes, he had been to see me,' and I says, ' Do you want your policy carried in that company ? ' He said, ' Yes, I would like to have you carry it, as I have been to see your brothers John and Will, and they could not do it. Now, I would like to have you carry it. I am getting a little bit old, and I would like to have one of you boys take care of me, and give me decent burial,' and I says, ' Father, I will do it."

September 14, 1893, appellee, in the name of his father, made an application, signing his father's name thereto, for a policy of insurance on his father's life, of $1,000, to replace the father's policy in the Total Abstinence Association, in which appellee was to be the beneficiary. The policy was issued by appellant September 16, 1893. The agent of appellant, who procured the application, knew that appellee signed his father's name and knew that the insurance was asked on the father's life with the son as beneficiary, but the officers of the company, while they may have known that the father's life was insured for the son's benefit, did not know the relations of the son to the father, nor that the son was not dependent on the father, nor that the father did not pay the premiums, until in June, 1894, when the company refused to receive further premiums.

George Dyon's wife, the beneficiary in the original policy in the Total Abstinence Association, gave her consent that her son, George A. Dyon, should become the beneficiary in the policy issued by appellant, but there is no evidence that George Dyon ever gave his consent to such change. His request was to carry the original policy, in which his wife was the beneficiary, in appellant company, and he said nothing of a change in the beneficiary, so far as appears from the evidence. The evidence shows that appellee was in no way dependent on his father; that appellee paid from his own money all the premiums on the policy, and the only basis for the insurance was the relationship of

father and son, the consent of the beneficiary in the original policy, and the agreement of appellee to carry the policy, take care of his father and give him a decent burial. It does not appear that the father had any property. George Dyon, the insured, died January 21, 1896. Appellee brought suit August 28, 1896, to recover the insurance, declaring specially upon the policy, to which appellant interposed the plea of general issue and seven special pleas presenting several different defenses, including the defense that appellee had no insurable interest in the life of George Dyon, his father, and therefore that the policy was void. Issues having been made, a trial was had before the court and a jury, which resulted in a verdict and judgment for appellee of $873.96, from which this appeal is taken.

JAMES FRAKE, attorney for appellant.

CHARLES WOODWARD and DAVID J. WILE, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

If it be conceded that George Dyon consented to his son becoming the beneficiary in the policy, the only question necessary to be considered is, did appellee have an insurable interest in the life of his father, George Dyon. A negative answer to that question makes the other questions raised immaterial. Whatever may be the law in other States, we think it is settled in Illinois, that the mere relationship of father to son does not give to the son an insurable interest in the father's life. The interest must be a pecuniary one in the continuance of the father's life. Guardian M. L. Ins. Co. v. Hogan, 80 Ill. 35–45; Gambs v. Ins. Co., 50 Mo. 44; Continental L. I. Co. v. Volger, 89 Ind. 575; Bloomington, etc., Ass'n v. Blue, 120 Ill. 121.

In the Hogan case, *supra*, the court say: "We are disposed, from an examination of the authorities and our own sense of the requirement of sound public policy, to concur

in such conclusion (that of May on Insurance), and hold that the mere relation here of father and son did not constitute an insurable interest in the son in the life of the father, unless the son had a well-founded or reasonable expectation of some pecuniary advantage to be derived from the continuance of the life of the father."

In the Volger case, *supra*, which cites with approval the Hogan case, it was held in a suit on a policy insuring the life of a mother for the benefit of her daughter, it must be alleged and proven that the daughter had a pecuniary interest in the life of her mother, the court stating the law to be, "The insurable interest in the life of another must be a pecuniary interest. Some of the authorities tend in the direction that near relationship, as between parent and child, is a sufficient foundation upon which to rest an insurable interest. But this view is not sustained by the weight of authority."

In the Blue case, *supra*, in which it was held that a policy was not void, because the beneficiary, though he had no insurable interest in the life of the assured, had nothing to do with the procurement of the policy or the payment of the premiums thereon, the court say: "Public policy forbids one person, who has no interest in the continuance of the life of another, from speculating on that life by procuring a policy of insurance." The policy was sustained because obtained by the assured and the premiums paid by him. It will thus be seen, the interest, in order to be insurable, must be pecuniary—not one of relationship or of love and affection.

In the case at bar, it appears, so far as George A. Dyon had a pecuniary interest, it was against the continuance of the father's life. Appellee's argument is, that as his father's expectation of life was thirteen years, under his contract with the father, appellee would be liable to pay for premiums on the policy, support and burial expenses—$1,530, while his indemnity under the policy, which was all he could expect from the father, could not exceed $1,000. The sooner the father died, the better would be appellee's position pecuniarily.

But there is another difficulty with appellee's case.  As we have seen, George Dyon did not give his consent that his son be made the beneficiary instead of his wife in the policy to be issued by appellant.  All his talk was about getting his policy in the Total Abstinence Association carried. It is elementary, that without the consent of George Dyon as to who should be his beneficiary, the policy could not be valid.

The judgment is therefore reversed.