### LIFE INS. CLEARING CO. v. O'NEILL.

(Circuit Court of Appeals, Third Circuit.   March 12, 1901.)

#### No. 7.

**1. LIFE INSURANCE—INSURABLE INTEREST—RELATIONSHIP.**
   The mere relation of father and son is not sufficient to give an adult son an insurable interest in his father's life.[1]

**2. SAME—POOR LAW—OBLIGATION TO SUPPORT—EFFECT.**
   Under the Pennsylvania poor law (Act 1836; P. L. 547, § 28), making the parents and children of every poor person liable to the district for the support of such person, an adult son has no insurable interest in his father's life, except for the purpose of reimbursing himself for payments actually made, or to be made, for his father's relief, and to protect himself against the loss of his father's support, when there is a reasonable expectation that his father will be able to support him.

In Error to the Circuit Court of the United States for the Western District of Pennsylvania.

---

[1] What constitutes an insurable interest in human life, see note to Manhattan Life Ins. Co. v. Hennessy, 39 C. C. A. 632.

J. P. Kyle, for plaintiff in error.

James Scarlett, for defendant in error.

Before DALLAS and GRAY, Circuit Judges, and McPHERSON, District Judge.

J. B. McPHERSON, District Judge. This is an action on a policy of insurance taken out and maintained by an adult son for his own benefit upon the life of his father, and the question for decision is whether, under the facts in evidence, the son had an insurable interest sufficient to support the policy. The learned trial judge held that such interest existed, relying mainly upon Insurance Co. v. Kane, 81 Pa. 154, but evidently deciding the point with some reluctance. His opinion upon this subject is as follows:

"The second question is, had the plaintiff an insurable interest in the life of his father? We have examined with much care the authorities and text-books on this subject. We find them conflicting to such an extent as to support a judgment on this reserved point for either the plaintiff or defendant. The supreme court of Pennsylvania in Insurance Co. v. Kane, 81 Pa. 154, held an adult son had an insurable interest in the life of his father. While the federal courts are not bound by the state courts' construction of a contract of insurance (Carpenter v. Insurance Co., 16 Pet. 495, 10 L. Ed. 1044; Liverpool & G. W. Steam Co. v. Phenix Ins. Co., 129 U. S. 443, 9 Sup. Ct. 469, 32 L. Ed. 788), yet, in view of the general conflict of decisions on this question, the fact that a state statute was an element in the conclusion reached by the supreme court of Pennsylvania, and that a decision holding the son had not an insurable interest might unsettle the status of policies in this state, we are moved, sitting at circuit, to hold, for the purposes of this case, the plaintiff had an insurable interest in the life of his father, leaving it to the circuit court of appeals to settle the question."

The uncontradicted evidence established the facts that the son was an adult, married, and having a home and family of his own apart from his father; that he was not supported by, and did not support, his father, but that each maintained himself by his own exertions. There is nothing to show that the relation of debtor and creditor existed between them. It will be observed, therefore, that the precise question is—laying aside, for the present, the effect of the poor law of Pennsylvania—whether the bare fact of relationship is sufficient to give an adult son an insurable interest in his father's life. Upon this point, all the decisions, so far as we have been able to discover, declare that no such interest exists, although dicta to the opposite effect are no doubt to be found, and, in our opinion, this declaration is not only supported by the weight of authority, but is also in harmony with the principles upon which the doctrine of insurable interest rests.

The sum of the decisions and of text-book discussion upon the subject of insurable interest may, we think, be fairly stated thus: No person has an insurable interest in the life of another unless he would in reasonable probability suffer a pecuniary loss, or fail to make a pecuniary gain, by the other's death; or (in some jurisdictions) unless, in the discharge of some undertaking, he has spent money, or is about to spend money, for the other's support or advantage. The extent of the insurable interest—the amount for which a policy may

be taken out, or for which recovery may be had—is not now under consideration. What is often called "relationship insurance" must be governed by this rule. It must rest upon the foundation of a pecuniary interest, although the interest may be contingent, and need not be capable of exact estimation in dollars and cents. Sentiment or affection is not sufficient of itself, although it may often be influential in persuading a court or jury to reach the conclusion that a beneficiary had a reasonable expectation of pecuniary advantage from the continued life of the insured. In one relation only— the relation of husband and wife—is the actual existence of such a pecuniary interest unimportant; the reason being that a real pecuniary interest is found in so great a majority of cases that the courts conclusively presume it to exist in every case, whatever the fact may be, and therefore will not inquire into the true state of a few exceptional instances. This, we think, is essentially what is meant by the declaration of courts and text-book writers that the mere relationship of husband and wife is sufficient to give an insurable interest. The supreme court of Vermont—alone, we think, among judicial tribunals—seems disposed to hold the presumption to be rebuttable. In Currier v. Insurance Co., 57 Vt. 496, it is said:

"Admitting that the rule as to the interest necessary to support a contract of life insurance is that the interest must be a pecuniary one, we think that, where no facts are shown in relation to the wife, the presumption is that the husband has an insurable pecuniary interest in her life. He is entitled to her services. There are many cases where she is the real support of her husband and family, or, as is sometimes said, she is the 'man of the house.' In all ordinary cases, the husband has a deep interest in the life of the wife. Cases may exist where the husband has no interest whatever in his wife's life. She may be a burden,—a hopeless maniac, or invalid,—and such facts may require the application of a different rule. There are none such in this case, and we only hold that the presumption is that the wife is a helpmate, and the husband has an interest of a pecuniary nature in her living."

In all other relationships there is no presumption of interest, and no insurable interest exists, unless the reasonable likelihood of pecuniary loss or gain is present in actual fact. No doubt, judicial language is to be found supporting the view that the mere relationship of parent and child is sufficient to give an insurable interest. The dictum in Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924, is perhaps more often referred to than any other similar declaration, and it may therefore be quoted as an example:

"It is not easy to define with precision what will in all cases constitute an insurable interest, so as to take the contract out of the class of wager policies. It may be stated generally, however, to be such an interest, arising from the relations of the party obtaining the insurance, either as creditor of or surety for the assured, or from the ties of blood or marriage to him, as will justify a reasonable expectation of advantage or benefit from the continuance of his life. It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration. But in all cases there must be a reasonable ground, founded upon the relations of the parties to each other, either pecuniary or of blood

or affinity, to expect some benefit or advantage from the continuance of the life of the assured. Otherwise, the contract is a mere wager, by which the party taking the policy is directly interested in the early death of the assured. Such policies have a tendency to create a desire for the event. They are, therefore, independently of any statute on the subject, condemned, as being against public policy."

The comment upon this passage in the note to Morrell v. Insurance Co., 57 Am. Dec., on page 96, seems to us to be sound, and we quote it with approval:

"If we correctly understand the doctrine here laid down, it amounts simply to this: that an insurable interest in another's life need not be pecuniary, in the sense of being susceptible of definite 'pecuniary estimation,' nor in the sense of being founded upon any mere pecuniary relation, but that it may rest solely upon ties of blood or affinity, and yet that the mere existence of such a tie is not of itself sufficient to constitute an insurable interest, but that the tie must be such as to give reasonable ground for an expectation of benefit or advantage from the continuance of the life. By 'benefit or advantage,' in this connection, we understand that it must be a material or physical 'benefit or advantage'; that is to say, a mere sentimental benefit arising from a gratification of the affections by the prolongation of the life assured will not suffice. The expected benefit must consist in service, maintenance, or the like. This is equivalent to saying that it must be a pecuniary benefit, as distinguished from a mere sentimental or moral gratification. Thus understood, the doctrine of those cases, which professedly reject the test of pecuniary interest, is not substantially different from that held in other cases. If it were true that the reasonable expectation of advantage from the continuance of another's life, required to constitute an insurable interest in that life, had reference in any case solely to the satisfaction of an affectionate desire for the prolongation of the life, ought not the insurers to be permitted to show in defense that there was in fact no affection between the parties? And, on the other hand, ought not an insurable interest to be held to exist wherever there is affection, though there was no other relation? Yet we venture to say, on the one hand, that the right of a husband to insure his wife's life would not be denied even if it should be distinctly proved that he had never had the slightest affection for her, and uniformly treated her as a mere household drudge: and, on the other hand, that, where there was no tie giving a reasonable ground to expect service or support, a friendship as warm and abiding as that between Damon and Pythias would not furnish an insurable interest in behalf of one in the life of the other. For a further discussion of this point, see the note to Lord v. Dall, 7 Am. Dec. 42."

We think it cannot be doubted that the tendency of the recent decisions is to insist upon an actual or presumed pecuniary interest in every case (although such interest may no doubt be contingent, and to some extent undefined), and to give relationship its proper place by regarding it merely as an important factor in the inquiry, whether such an interest does in reality exist. If, then, the test of pecuniary interest is to be applied to the facts of the present case, it is clear that the son had no insurable interest in his father's life. Again laying aside the effect of the poor law of Pennsylvania, it is plain that the son would lose nothing by his father's death, and would gain nothing by his father's continuance in life. His father did not support him, and he himself had not spent, nor was he about to spend, any money in his father's behalf or support. Upon principle, therefore, we think that the policy cannot be supported.

If we turn to the decided cases, the weight of authority leads to the same conclusion. We have not been referred to any case in

which it is held that the mere fact of relationship between a father and his adult son is sufficient. As already stated, dicta to this effect are certainly to be found, notably in Loomis v. Insurance Co., 6 Gray, 396; Warnock v. Davis, supra; and Corson's Appeal, 113 Pa. 446, 6 Atl. 213. But, while these expressions of opinion are entitled to much respect because of the sources from which they come, it is also true that the point was not presented for decision in these cases, and was therefore, presumably, neither argued nor specially considered. For this reason, we cannot give to such expressions the same weight that is properly given to a decision upon the very question. The following cases deal with the insurable interest growing out of the relation of parent and child. Other citations may be found in the note to 57 Am. Dec. 96, and in May, Ins. (4th Ed.) §§ 104–107. In Illinois, the case of Insurance Co. v. Hogan, 80 Ill. 35, decides that the mere relation of father and son does not give to the son an insurable interest in the life of the father, the court saying that the son must also have a well-founded or visible expectation of some pecuniary advantage to be derived from the continuance of his father's life; and the recent case of Society v. Dyon, 79 Ill. App. 100, repeats the ruling, that the mere relationship of father and adult son is not sufficient to give the son an insurable interest in the father's life. The point decided in Mitchell v. Insurance Co., 45 Me. 105, was that a father has an insurable interest in the life of his minor son, but the court added the dictum—which may be cited in connection with opposing expressions of opinion—that "a father, as such, has no insurable interest, resulting merely from that relation, in the life of a child of full age." The supreme court of Indiana in Insurance Co. v. Volger, 89 Ind. 572, held that a daughter has no insurable interest in the life of her mother, saying that the insurable interest in the life of another must be a pecuniary interest, and adding: "Some of the authorities tend in the direction that mere relationship, as between parent and child, is a sufficient foundation upon which to rest an insurable interest, but this view is not substantiated by the weight of authority." Wakeman v. Insurance Co., 30 Ont. 705, decided that a parent has a valid insurable interest in the life of a minor child. Insurance Co. v. Brant, 47 Mo. 419, which was an action on a policy in favor of a wife upon the death of her husband, contains a dictum that "at common law the insurable interest in the life of another person must be a direct and definite pecuniary interest, and a person has not such an interest in the life of his wife or child merely in the character of husband or parent." In Association v. Teewalt, 79 Va. 423, decided in 1884, it does not appear whether the son was a minor or an adult, nor whether the son had taken out the policy on his father's life, or was merely the beneficiary in a policy taken out and maintained by the father himself. But, assuming the facts to have been as they are in the case now being considered, we cannot agree with the assertion of the supreme court of appeals of Virginia that "it is now well settled that a father has an insurable interest in the life of his child, whether a minor or of full age, and the child in the life of his father." Two

cases are cited in support of this assertion, the first being War-nock v. Davis, 104 U. S. 775, 26 L. Ed. 924, in which the validity of an assignment of a life policy, made to a person having no insurable interest, was the point at issue,—the declaration concerning the interest between parent and child being merely a dictum,—and the second case being Insurance Co. v. Luchs, 108 U. S. 498, 2 Sup. Ct. 949, 27 L. Ed. 800, in which the point decided was that one partner had an insurable interest in the life of his co-partner. We think, therefore, it may be safely said that the Virginia court was perhaps overconfident in declaring the proposition just quoted to be well settled. In the English courts it has been distinctly decided that a father has no pecuniary interest in the life even of his minor son (Halford v. Kymer, 10 Barn. & C. 725); and in Worthington v. Curtis, 1 Ch. Div. 419, the court assumed, as a proposition that did not need discussion, that a father has no insurable interest in the life of his adult son. The cases thus cited and referred to are, with few exceptions, the only cases in which the question now before us has been passed upon, and they certainly justify the conclusion that there is a conflict of opinion, if not of decision, upon the question now before the court. But, while this is true, the weight of authority is, in our opinion, against the position that an adult son has an insurable interest in the life of his father merely by virtue of kinship. The current of the recent decisions shows a clear tendency to insist upon the existence of a pecuniary interest, actual or contingent, upon the part of the son before he can take out a valid policy upon his father's life.

It remains to consider the poor law of Pennsylvania, and Insurance Co. v. Kane, 81 Pa. 154. The opinion in that case is as follows:

"By the twenty-eighth section of the poor law of June 13, 1836, the father and grandfather, and the mother and grandmother, and the children and grandchildren, of every poor person not able to work, shall, at their own charge, being of sufficient ability, relieve and maintain such poor person, at such rate as the court of quarter sessions of the proper county shall order and direct. Maintenance of a father or mother unable to work is therefore a legal liability. When we add to this the feelings of natural affection, and the desire produced by these feelings to provide for the comforts of parents, the right to effect insurance on the life of the parent, to carry out these purposes, ought not to be denied. It would be technical in the extreme to say that a son has no insurable interest in his father's life. Poverty may overtake the father in his lifetime, and thus both father and mother be cast upon the son; or, if the father die before her, the necessity may fall at once upon the son. Why, then, should he not be permitted to make a provision, by insurance, to reimburse himself for his outlays, past or future? What injury is done to the insurance company? They receive the full premium, and they know in such case, from the very relationship of the parties, that the contract is not a mere gambling adventure, but is founded in the best feelings of our nature, and on a legal duty which may arise at any time. We are of opinion that the policy is not void."

From this statement of the grounds of decision, it is apparent that the principal reliance of the court is upon the obligation created by the poor law of Pennsylvania. The fact of relationship is referred to, but not dwelt upon, and it is certainly not distinctly put forward in support of the court's conclusion. Turning, therefore, to section

28 of the act of 1836 (P. L. 547), we find the statutory provision to be as follows:

"The father and grandfather, and the mother and grandmother, and the children and grandchildren, of every poor person not able to work, shall, at their own charge, being of sufficient ability, relieve and maintain such poor person, at such rate as the court of quarter sessions of the county where such poor person resides shall order and direct, on pain of forfeiting a sum not exceeding twenty dollars for every month they shall fail therein, which shall be levied by the process of the said court, and applied to the relief and maintenance of such poor person."

Other sections of the act make it plain that the primary obligation to furnish support to any poor person is imposed upon the poor district, and that section 28 is intended to relieve the district, and not to create a legal right that is directly enforceable at the suit of the poor person against the son or the father, as the case may be. It is, of course, well known that the legal obligation of the father, under the common law, to maintain his child, ceases as soon as the child becomes of age, and that there is no legal obligation resting upon a child to support a parent. Schouler, Dom. Rel. (2d Ed.) pp. *321, *365, and cases cited. The obligation under the various poor laws is ordinarily a duty directly owing to the district, and only indirectly owing to the poor person. This consideration was apparently influential in determining the appellate court of Indiana to hold that a son has no insurable interest in his mother's life by virtue of a similar statutory provision, although other reasons are also given by the court for this ruling. Society v. Templeton, 16 Ind. App. 126, 44 N. E. 809. We are not disposed, however, to lay any stress upon the indirect character of the obligation mutually to support each other, thus laid upon parent and child by the poor law of Pennsylvania. The obligation exists, no matter for whose benefit directly, nor at whose suit it may be enforceable, and we shall consider it as if the statute made it directly available by the person reduced to poverty and needing support. Thus considered, what bearing has the section quoted upon the question now before the court? Manifestly, it affects an adult son in two ways—First, it makes him liable to support his father, if the son be of sufficient ability; and, second, it makes the father liable to support his son, if the father be of sufficient ability. The supreme court of Pennsylvania in Kane's Case considered the subject exclusively from the first point of view, namely, the son's liability to support the father, and put the decision on the son's right to be reimbursed for outlays, past and future, in discharge of such liability. There is no doubt that the actual expenditure of money by the son for the purpose of supporting his father would give the son an insurable interest in the father's life, nor is there any doubt that a policy could be taken out by the son to provide for the repayment of similar expenditures to be made in the future. But, if no expenditure is actually made, there is no right of recovery; and, in any event, recovery is to be limited to the amount expended. This has been several times decided by the supreme court of Pennsylvania,—Seigrist v. Schmoltz, 113 Pa. 326, 6 Atl. 47, being, perhaps, the leading case,—and, if the principle of these recent deci-

sions had been applied to the facts of Insurance Co. v. Kane, it would have prevented recovery in that case. There was no evidence there to show that the son had spent any money in his father's support; and, as this is true of the pending action also, we think it follows that the plaintiff below had no claim founded upon the poor law of the state. He had paid nothing to support his father, and therefore had no claim to be reimbursed. The word implies a previous payment, an expenditure actually made, for which the person paying is to be made good.

The second provision of the Pennsylvania poor law that is referred to in the foregoing paragraph of this opinion makes the father liable to support his adult son if the latter falls into poverty; and this, we think, would give the son an insurable interest in his father's life, if the remaining condition of the statute is found to exist, namely, sufficient ability, present or prospective, upon the part of the father. Two things must concur before the obligation is enforceable,—the son must be unable to work, and the father must be of sufficient ability to respond to the call for support. Clearly, therefore, the insurable interest of the son depends upon the father's ability to discharge the obligation, or, at the best, upon the reasonable prospect that the father will be of sufficient ability. Where there is no evidence, as there was none in the case at bar, to justify a finding that the father had, or would ever have, the ability to support the son in case of need, a necessary prerequisite to the right of support is wanting, and a necessary prerequisite, also, of the right to insure the father's life. The son's interest was, not that his father should live in order to be his support if want should overtake him, but that the father should die, in order that premiums should cease upon the policy, and the principal sum should become presently payable.

Without further elaboration, we may state our conclusions as follows:

(1) The mere relationship of father and son does not give an adult son an insurable interest in his father's life. Such an interest may exist under the circumstances of a particular case, but relationship alone is not sufficient to establish it.

(2) Under the poor law of Pennsylvania, an adult son has an interest in his father's life sufficient to support a policy of insurance for either or both of two purposes,—to reimburse him for payments actually made, or to be made, on his father's behalf; and to protect him against the loss of his father's support, when there is a reasonable expectation that his father will be of sufficient ability to respond to the call that may be made upon him.

The judgment of the circuit court is reversed, and the case is remanded, with instructions to enter judgment upon the reserved point in favor of the defendant.