CASE 21.—MANDAMUS BY MOSES N. WEBSTER TO COMPEL TOR FOR ADVICE AS TO THE DISTRIBUTION OF THE PROCEEDS OF HER LIFE POLICY TO WHICH JOE WOODS AND ANOTHER FILED A CROSS-PETITION.—October 30.

# Woods, &c., v. Woods' Admr.

Appeal from Shelby Circuit Court.

W. H. HOLT, Special Judge.

From the judgment cross-petitioners appeal.—Reversed

1. Insurance—Assignment—Contract—Parties—Mental Capacity. —Evidence held to show that insured was mentally capable of contracting with her sons to pay the premiums on her life policy and take the proceeds at her death.

2. Insurance — Life Insurance — Insurable Interest—Parent and Child.—The relationship between parent and child is itself sufficient to give either an insurable interest in the life of the other.

3. Insurance—Life Insurance—Contract with Stranger to Pay Premiums.—Where a mother contracted with her sons to pay premiums on her life policy and take the proceeds at her

Woods, &c. v. Woods' Admr.

death, an agreement between the sons and a nephew of insured, who had no insurable interest, that he should furnish one-third of the premiums and have one-third of the proceeds of the policy did not affect the validity of the policy or affect the sons' interest therein.

P. J. BEARD for appellants.

## AUTHORITIES CITED.

Connecticut Mutual Life Insurance Co. v. Schaefer, 94 U. S., 254; Warnock v. Davis, 104 U. S., 926; The Aetna Life Insurance Co. v. France, 94 U. S., 287; Hull v. The Grand Lodge of Ancient Order of United Workman, 32 Ky. Law Rep., 212; Hess' Administrator v. Segenfelter, 32 Ky. Law Rep., 225; Blackstone's Commentaries, Lewis Edition Book 1, Chap. 16, 428; Beard v. Sharp, 100 Ky., 606; New York Life Insurance Co. v. Brown's Admr., 23 Ky. Law Rep., 2072; Caudell v. Woodward, 96 Ky., 646; Weigleman v. Bronger, 96 Ky., 132; Valley Mutual Life Association v Teewalt, 69 Va., 423; Reserve Mutual Insurance Co. v. Kane, 81 Pa., 154; Equitable Life Insurance Co. v. Hezelwood, 75 Texas, 338; Tucker v. Mutual Benefit Life Company, 121 N. Y., 718; Trenton Mutual Life Insurance Co. v. Johnson, 24 N. J. L., 576; Hilliard v. Sandford, 4 Ohio N. P., 363.

GILBERT & GILBERT for appellees.

J. C. BECKHAM & SON of counsel.

## POINTS AND AUTHORITIES.

1. The entire purpose and scheme and consideration of the contract between Joe and Sam Wood and George T. Wood was illegal and void. (Branin v. angford, 3 Bibb., 500; Donallen v. Lenox, 6 Dana, 91; Swann v. Chandler, 8 B. Mon., 98; Gardner v. Maxey, 9 B. Mon., 90; Collins v. Merrill, 2 Met., 164; Kimbrough v. Lane, 11 Bush, 556.)

It is elementary that the nephew, George T. Woods, and his father Steve Woods, not being creditors had no insurable interest in the life of Sarah E. Woods.

3. Under the circumstances of this case the two adult sons, Joe and Sam Woods, had no insurable interest in the life of Sarah E. Woods. (Life Insurance Company v. O'Neill, 54 L. R. A., 225, notes and cases; Chicago Guarantee Fund v. Dyon, 79 Ill. App., 100; Mitchell v. Union Life Ins. Co., 45 Maine, 104;

Continental Insurance Co. v. Nolger, 89 Ind., 572; Prudential Life Ins. Co. v. Hunn, 21 Ind. App., 522; Helmetag v. Miller, 76 Ala, 183.)

4. The real contract was against public policy, and a gambling speculation in human life. (Tate v. Building Association, 45 L. R. A., 245 and notes; Mutual Aid Society v. McDonald, 1 L. R. A., 238; Gilbert v. Moose, 104 Penn., 49; Life Insurance Co. v. O'Neill, 54 L. R. A., 225; Basye v. Adams, 81 Ky., 368; Adams' Administrator v. Reed, 18 Ky. Law Rep., 858.)

5. The Kentucky cases have occasionally given expression to dicta indicating that the mere relationship of parent and child is alone sufficient to sustain a life policy, but no case in point can be found. (Beard v. Sharp, 18 Ky. Law Rep., 1029; 35 L. R. A., 647 and notes; 25 Cyc. p. 706, and notes; Prudential Life v. Loyden's Admr., 20 Ky. Law Rep., 881; Embry's Admr. v. Harris, 21 Ky. Law Rep., 714; McClain v. Metropolitan Life, 177 Mass., 280; 25 Cyc. p. 704, note 36; Griffin's Admr. v. Equitable Assurance Society, 27 Ky. Law Rep., 315.)

6. Cases arising out of Fraternal Societies where the charter and laws of the organization designate who the beneficiaries shall be are in point. (Candell v. Woodward, 96 Ky., 646; Basye v. Adams, 5 Ky. Law Rep., 81; 81 Ky., 368; Settle v. Hill, 9 Ky. Law Rep., 691; Beard v. Sharp, 18 Ky. Law Rep., 1029.)

7. But whether Joe and Sam Wood had an insurable interest or not is really not involved in this case, because, while the decoy contract with Sarah E. Wood, stipulated that they would pay the premiums and should have the proceeds of the policy, they abandoned and refused to execute the contract, and do not allege or claim under and other contract.

Additional authorities by J. C. Beckham & Son for appellee.

Warnock v. Davis, U. S. Supreme Court Reports, p. 462; Cammack v. Wallace, 15 Wallace, 643.

OPINION OF THE COURT BY WM. ROGERS CLAY, COMMISSIONER—Reversing.

Sarah E. Woods died intestate on the 14th of March, 1907, leaving as her heirs at law the appellants, Joe Woods and Sam Woods, and the appellees, Oad Woods, Arthur Woods, Mary Woods, and others. In the year 1901 she had her life insured in the Equit-

able Life Assurance Society in the sum of $10,000. At the time she obtained the policy of insurance she entered into a contract with appellants, Joe Woods and Sam Woods, by which it was agreed that they should pay the insurance premiums on the policy, and in consideration thereof they should be entitled to the proceeds at her death. At the same time they entered into an agreement with George T. Woods, a nephew of Sarah E. Woods, by which he agreed to furnish appellants one-third of the premiums due on the policy, and in consideration thereof was to share in one-third of the proceeds. Upon the death of Sarah E. Woods the Equitable Life Assurance Society paid the $10,000 to H. C. Riner, who had qualified as her administrator. He instituted this action in the Shelby circuit court for the purpose of obtaining the advice and direction of the court as to how the fund should be distributed. and to whom paid. To this petition Joe Woods and Sam Woods by answer, counterclaim, and cross-petition set up the agreement above referred to, alleged that they had paid the annual premium of $579.50 for the years 1900, 1901, 1902, 1903, 1904, 1905, and 1906, and asserted claim to the entire proceeds of the policy of $10,000. To this a reply was filed by the other heirs, the appellees herein, in which they claimed that the agreement between appellants and their mother was procured by fraud, that she was not mentally capable of entering into an agreement, and that appellants. had no insurable interest in the life of their mother. On submission of the case the trial court rendered an opinion and judgment based thereon, by which it was held that the policy was issued on the life of Sarah E. Woods, payable by its terms at her death to her estate; that a written contract was entered into between her and two of her

sons, the appellants, by which they were to pay the
yearly premiums, and be the beneficiaries of the pol-
icy; that these sons made an agreement with George
T. Woods, by which he was to receive one-third of the
proceeds of the policy, upon paying to them one-third
of the premiums; that the premiums were all paid by
the appellants; that George T. Woods, and his admin-
istrator after his death, paid to the appellants one-
third of the premiums. The court then directed that
the administrator pay to the appellants the premiums
paid by them on the policy, with interest thereon from
the dates of the respective payments until paid; that
the balance of the $10,000 was a part of the estate of
Sarah E. Woods, and was ordered to be held and so
accounted for by the administrator. From the judg-
ment so entered, this appeal is prosecuted.

The trial court seems to have disregarded the plea
of fraud and of mental incapacity, and we think prop-
erly so. The evidence in this case conduces to show
that Sarah E. Woods was a woman of fine common
sense, and that she knew how to attend to and manage
her own affairs. When she took out the policy she
understood perfectly well the nature of the contract
which she had made with appellants. There is also
evidence to the effect that the same privilege, of tak-
ing out insurance on her life, was accorded to her
other children, but that they failed to avail themselves
of it. All along they knew of the existence of the pol-
icy in question and of the fact that appellants were
paying the premiums thereon in pursuance of the con-
tract by the terms of which they expected to secure
the proceeds. However, the trial court held that
appellants,, who were the sons of Sarah E. Woods,
had no insurable interest in the life of their mother.
The court seems to have proceeded upon the idea that

some other element, such as that of support or a pecuniary interest in the life of the mother, was necessary in addition to the relationship which existed between the mother and her sons. Appellees below seem to have relied, and the court itself appears to have based its opinion upon the doctrine laid down in the case of Life Insurance Company v. O'Neill, 106 Fed. 800, 45 C. C. A. 641, 54 L. R. A. 225. In that case it was decided by the Circuit Court of Appeals that "an adult son has not, from the bare fact of relationship, an insurable interest in the life of his father." This case follows the English doctrine. The latter doctrine, however, was based upon the statute 14 George III., c. 48, which provided that, to support insurance on the life of another, there must have been a pecuniary interest on the part of the insured in the life of the assured, and the interest ordinarily growing out of relationship or consanguinity is not alone sufficient. Although having no similar statute, the courts of several States have adopted the English doctrine. With all due deference to the courts thus holding, we are of the opinion that the rule announced by them does not accord with the weight of authority, and is not based upon sound reasoning.

In the recent case of Hess' Admr. v. Segenfelter, etc., 127 Ky. 348, 105 S. W. 476, 32 Ky. Law Rep. 225, 14 L. R. A. (N. S.) 1172, this court, in discussing the question of insurable interest, said: "It has been held a son has an insurable interest in the life of his father (Reserve Mutual Life Ins. Co. v. Kane, 81 Pa. 154, 22 Am. Rep. 741.); a father has an insurable interest in the life of his child (Williams v. Washington Life Ins. Co., 31 Iowa 541); sisters and brothers have an insurable interest in the life of each other (May on Insurance, section 107); a wife has an insur-

able interest in the life of her husband, and a husband
in the life of his wife (Currier v. Continental Life
Ins. Co., 57 Vt. 496, 52 Am. Rep. 134; Ky. Stats., 1903,
section 654); a person dependent upon the life of
another has an insurable interest in that life (Lord v.
Dall, 12 Mass. 115, 7 Am. Dec. 38); a granddaughter
has not an insurable interest in the life of her grand-
father, nor has a nephew, as such, an insurable inter-
est in the life of an aunt, nor a son-in-law an insur-
able interest in the life of his mother-in-law (May on
Insurance, section 107). In Eingleton v. St. Louis
Ins. Co., 66 Mo. 63, 27 Am. Rep. 321, an uncle was
held not to have an insurable interest in the life of
his nephew. In Burton v. Connecticut Mut. Life Ins.
Co., 119 Ind. 207, 21 N. E. 746, 12 Am. St. Rep. 405,
the court held that a grandchild had no insurable
interest in the life of his grandfather. A stepson has
no insurable interest in the life of his step-father,
where he has a separate home and family of his own.
United Brethren Mutual Aid Society v. McDonald,
122 Pa. 324, 15 Atl. 439, 1 L. R. A. 238, 9 Am. St. Rep.
111. "These authorities illustrate the limitations that
have been placed on insurable interest, and the extent
to which the courts have gone in an effort to prevent
wagering and speculative contracts of insurance.
Although an examination of them will show various
reasons for the conclusion reached, it may safely be
said that the relationship of creditor and debtor must
exist, or that the beneficiary must have or expect some
pecuniary relief, benefit, or advantage from the con-
tinuance of the life of the insured, or the relationship
growing out of ties of blood or marriage must be so
close as to justify the well-founded belief that loss or
disadvantage would naturally and probably arise to
the party in whose favor the policy is written from

the death of the person whose life is insured. Generally, the courts have endeavored to make insurable interest dependent on the question that pecuniary loss would presumably result to the beneficiary from the death of the insured; but, where the relationship, as in the case of husband and wife, parent and child, sister and brother, is so close as to preclude the probability that mercenary motives would induce the sacrifice of life to gain the insurance, the element of pecuniary consideration is not deemed essential to sustain the validity of the policy."

Prior to the above opinion the doctrine that a son had an insurable interest in the life of his parent was recognized in Beard v. Sharp, 100 Ky. 606, 38 S. W. 1057, 18 Ky. Law Rep. 1029. In Warnock v. Davis, 104 U. S. 779, 26 L. Ed. 926, the rule is thus stated: "It is not necessary that the expectation of advantage or benefit should be always capable of pecuniary estimation; for a parent has an insurable interest in the life of his child, and a child in the life of his parent, a husband in the life of his wife, and a wife in the life of her husband. The natural affection in cases of this kind is considered as more powerful—as operating more efficaciously—to protect the life of the insured than any other consideration." In 25 Cyc., p. 704, the doctrine is thus laid down: "It has sometimes been said in definite terms that the relationship of parent and child, without right or liability as to support, and without other direct pecuniary interest, is not sufficient to sustain a policy taken by one on the life of the other. But a more liberal rule seems to be supported by many authorities, in accordance with which such relationship is sufficient in itself to show such interest as will support a policy by the one on the life of the other." Among the cases recognizing this doc-

trine may be cited the following: Valley Mutual Life Association v. Teewalt, 79 Va. 423; Reserve Mutual Insurance Co. v. Kane, 81 Pa. 154, 22 Am. Rep. 741; Equitable Life Insurance Co. v. Hazelwood, 75 Tex. 338, 12 S. W. 621, 7 L. R. A. 217, 16 Am. St. Rep. 893; Tucker v. Mutual Benefit Life Co., 121 N. Y. 718, 24 N. E. 1102; Trenton Mutual Life Insurance Co. v. Johnson, 24 N. J. Law 576; Hilliard v. Sandford, 4 Ohio N. P. 363.

In speaking of the duties due from children to their parents, Blackstone (1 Lewis' Ed. p. 428) says: "The duties of children to their parents arise from a principle of natural justice and retribution; for to those who gave us existence we naturally owe subjection and obedience during our minority and honor and reverence ever after. They who protected the weakness of our infancy are entitled to our protection in the infirmity of their age. They who by sustenance and education have enabled the offspring to prosper ought in return to be supported by that offspring in case they stand in need of assistance. Upon this principle proceed all the duties of children to their parents, which are enjoined by positive laws." It may be safely said that no relationship in life, arising from ties of blood, is more sacred or more binding than that of parent and child. As the mother looks into the eyes of her child and uses every effort to guard it from harm and prolong its life, so the child as maturity comes raises a strong arm to protect her in her old age, and looks with fear to the time when she will be taken away. Thus every common instinct, to say nothing of love and affection, makes each interested in the long life of the other. With such a tie uniting parent and child, we can not accede to the doctrine that some pecuniary loss or disadvantage

must result to the son from the death of his mother in order that he may be interested in the continuation of her life. We, therefore, conclude that the relationship between parent and child is of itself sufficient to give either an insurable interest in the life of the other, and that no other element is required.

Nor do we think the fact that appellants entered into a contract with George T. Woods, by which he was to furnish one-third of the premiums and to share in one-third of the proceeds of the policy, had the effect of invalidating the policy so far as the appellants are concerned. This precise question was before this court in the case of Beard v. Sharp, supra. There the son had for a number of years paid the premiums on the policy of insurance on the life of his mother issued for his benefit. After paying several premiums he caused a new certificate to be issued, making himself and a stranger joint beneficiaries, the stranger agreeing to pay the premiums. This court held that the son was entitled to the whole amount of the proceeds of the policy, less the premiums paid by the stranger, with interest thereon, and further held that the insurance was not invalidated by the designation of a person prohibited by law from being a beneficiary. Indeed, it may be said to be the general rule that a contract of insurance is not invalidated by the designation of a person prohibited by law to be a beneficiary. Caudell v. Woodward, 96 Ky. 646, 29 S. W. 614, 15 Ky. Law Rep. 63; Weigelman v. Bronger, 96 Ky. 132, 28 S. W. 334, 16 Ky. Law Rep. 401; Warnock v. Davis, 104 U. S. 775, 26 L. Ed. 924.

Being of the opinion that Sarah E. Woods was mentally capable of contracting, and that no fraud was practiced, either upon her or appellees herein, in securing the contract of insurance, that the subse-

quent contract made by appellants with George T. Woods did not affect the validity of the policy, or appellant's interest therein, and that the relationship existing between appellants and their mother was sufficient, in and of itself, to give them an insurable interest in her life, we therefore conclude that appellants are entitled to the whole proceeds of the policy.

For the reasons given, the judgment is reversed, and cause remanded, with directions to enter judgment in conformity with this opinion.