## U. B. MUTUAL AID SOC. v. M. McDONALD.

ERROR TO THE COURT OF COMMON PLEAS OF DAUPHIN
COUNTY.

Argued May 28, 1888—Decided October 1, 1888.

1. To create an insurable interest which will support a contract of life
insurance, there must be a reasonable ground, founded in the relations
of the parties, either pecuniary or of blood or affinity, to expect some
relief or advantage from the continuance of the life of the insured.

2. Where there is no such insurable interest the motive or intention of the
beneficiary is not a question to be submitted to the jury; the law will
presume that the insurance was procured for the purpose of a wager or
speculation.

3. A step-son having a separate home and family of his own, not a credi-
tor, nor dependent upon or responsible for the support of his step-father,
has no insurable interest in the life of the step-father.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK
and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 1 May Term 1888, Sup. Ct.; court below, No. 209
November Term 1886, C. P.

On November 21, 1886, an action of debt was brought by
Michael McDonald against the U. B. Mutual Aid Society of
Pennsylvania, to recover upon a policy issued by the defend-
ant company on March 22, 1882, upon the life of Roger Mc-
Devitt, in the sum of $3,000.

At the trial on April 12, 1887, it was shown that in the ap-
plication by Roger McDevitt for the insurance, it was directed
that upon his death the amount of the policy should be paid to
Michael McDonald, designated therein as his step-son, and
that McDonald was to pay all the assessments. It further ap-
peared that McDevitt had married McDonald's mother, when
McDonald was but a boy. The mother had died, and at the
time of the insurance McDonald had married and was living
in his own home, separate from his step-father, who was 58
years of age. McDevitt died on April 12, 1886. Assessments
amounting to the sum of $732.00 were levied upon this policy

and received by the association during McDevitt's lifetime, and $181.44 were assessed after his death and claimed as a credit.

The plaintiff, under cross-examination:

Q. Did he owe you any money at the time he got this insurance? A. No, he never owed me no money. All the money we used to give to one another and did not charge one another at all. Q. He gave you money and you gave him money? A. Yes. Q. At the time of the application he did not owe you anything? A. No; he didn't. Q. This application was made at the instance of your wife? A. No, he told me that I could get anything I wanted. Q. And your wife suggested the making of the application for insurance to protect her? A. I do not understand that. Q. You say that this insurance was for your wife's benefit? A. No: it was for my benefit, which lived the longest. Q. Well, your wife made application for it? A. Yes; but I told my wife. Q. You sent your wife? A. I sent my wife, for I had no time. Q. You paid all the money that was paid on it? A. Yes, sir; I did. Q. And Mr. McDevitt simply allowed you to use his name and his signature to the application? A. Yes; that was all.

At the close of the testimony the court, SIMONTON, P. J., charged the jury in part as follows:

\*　　\*　　\*　　\*　　\*　　\*　　\*　　\*

The mere fact that the plaintiff was a step-son does not give an insurable interest in the life of the insured. If a person should take out a policy of insurance on the life of a step-father for the purpose of speculation or a wager, it would be void and there could be no recovery upon it, if that was all that there was in it. In this particular case, as the application shows and the policy recites, the policy was taken out by the person insured himself. It is recited that he paid the first annual premium and took out the policy.

It has been said, and is a fact, that a person has an insurable interest in his own life. A person has a right to take out a policy of insurance on his own life, and he has a right to make it payable to some one else if he chooses to do so, and if he does it for an honest purpose. If it is taken out on his own life, and by himself, and made payable to another by collusion with the other, and for the purpose of wager and speculation,

it would not be valid; but if it is done honestly and fairly, and for an honest and fair purpose, and there be nothing of the character of wager or speculation about it, then it is valid. [And in this case, we submit this question to you, whether this policy was taken out for the purpose of wager or speculation; whether this plaintiff himself, or he and his step-father, one or either, took this policy out for the purpose of speculation, or as a wager, upon the step-father's life. If it was taken out as a wager, or as a speculation, it is void, and the verdict must be in favor of the defendant. If, on the other hand, there was that relation existing between them, of which there is some testimony here—how much is for you—if they were, during the step-son's minority, living together as father and son; the plaintiff treating him as a father, and being treated as a son; if such relation continued to exist between them as naturally would continue to exist between a father and a son up to the time that this insurance was taken; if it was taken out, in view of that relationship, for the honest, bona fide purpose on the part of the person insured to effect an insurance on his life for the benefit of his step-son and without any idea of wager or speculation, then we say to you that for the purposes of your action upon this case it is valid and that the plaintiff is entitled to recover. That is the question which you are to determine, and the only question which is submitted to you.] [3]

We submit that question to the jury subject to the reserved point whether this policy, having been issued for the benefit of the step-son of the person whose life was insured, there being at the time no relation of debtor and creditor between them, as a question of law is void. We reserve that question.

The defendant requests the court to charge:

1. The undisputed testimony being that McDevitt married plaintiff's mother, who was deceased before the insurance was effected, and this being the only relationship between the plaintiff and the assured, and there being no relationship of debtor or creditor between them, there is no insurable interest, and the plaintiff cannot recover in this case.

Answer: I shall leave the question to the jury whether this was a wagering policy or not, and reserve the legal question. [1]

2. That there is no evidence to be submitted to the jury

from which they can find that the policy was other than a wagering policy.

Answer: The court declines so to charge.[2]

The verdict of the jury was in favor of the plaintiff for $2,912.08. The same day the defendant moved that judgment be entered upon the reserved question in favor of the defendant non obstante veredicto.

On May 9, 1887, the court filed an opinion which, after considering American L. & H. Ins. Co. v. Robertshaw, 26 Pa. 189; Hale v. Insurance Co., 6 Gray 172; Campbell v. Insurance Co., 98 Mass. 389; Cammack v. Lewis, 15 Wall. 643; Warnock v. Davis, 104 U. S. 775; Gilbert v. Moose, 104 Pa. 74, concluded: Upon the whole case we think the verdict ought to stand, either on the ground that the plaintiff, on the special facts in this case, had an insurable interest, or that the interest of the assured in his own life supports the contract to pay, as against the company; and that public policy would be better conserved by so holding, and treating plaintiff as a trustee for those entitled to the fund, than by permitting the company to knowingly make such contracts with persons who act in good faith, and not with intent to speculate, and after having collected large assessments, repudiate them.

If the court of last resort thinks otherwise, the case is in such shape that our error may be readily corrected, and the proper judgment entered.

Judgment having been entered on the verdict, the defendant took this writ, assigning as error, inter alia:

1, 2. The answers to the defendant's points.[1] [2]

3. The part of the charge embraced in [ ][3]

4. The refusal of judgment for the defendant non obstante veredicto.

*Mr. S. J. M. McCarrell* (with him *Mr. David Fleming, Mr. John H. Weiss* and *Mr. Lyman D. Gilbert*), for the plaintiff in error:

1. "We may take it that it is well settled that in the law of contracts, the first purpose of the courts is to look to the welfare of the public, and if the enforcement of the agreement would be inimical to its interests, no relief can be granted to

the party injured, even though it might result beneficially to the party who made and violated the agreement. . . . . . The law will not permit individuals to oblige themselves by a contract to do or not to do anything, when the thing to be done or omitted is in any degree clearly injurious to the public:" Greenhood on Public Policy, 2, 3, 5.

2. It is settled law in this state that an insurance contract is void, unless the insured has an interest in the subject matter of the policy: Adams v. Insurance Co., 1 R. 106. This principle has been steadily adhered to, and recently has been frequently and unhesitatingly applied to contracts of insurance upon human life: Gilbert v. Moose, 104 Pa. 80; Stoner v. Line, 16 W. N. 187; Keystone M. B. Ass'n v. Norris, 115 Pa. 446; Downey v. Hoffer, 110 Pa. 109; Seigrist v. Schmoltz, 113 Pa. 326; Grant v. Kline, 115 Pa. 618; Cooper v. Shaeffer, 9 Cent. R. 601.

3. One cannot purchase and hold by assignment, as a speculation, a policy of insurance upon one in whose life he has no insurable interest. He cannot recover upon the policy, without an insurable interest in the life of the insured: Franklin F. Ins. Co. v. Hazzard, 41 Ind. 116 (13 Amer R. 313); Missouri Valley L. Ins. Co. v. Sturges, 18 Kas. 93 (26 Amer. D. 761); Franklin L. Ins. Co. v. Sefton, 53 Ind. 380; Stevens v. Warren, 101 Mass. 564. The burden of showing an insurable interest is on the claimant: Singleton v. Insurance Co., 66 Mo. 63 (27 Amer. R. 321.)

4. Motive and good faith were matters of no importance, as this court has ruled in Downey v. Hoffer, 110 Pa. 109, and in Seigrist v. Schmoltz, 113 Pa. 331. And there was not a scintilla of evidence to enable the jury to determine the question submitted to them, as against the firmly established legal principle that without an insurable interest the policy could not be enforced: Moore v. Small, 19 Pa. 468; De France v. De France, 34 Pa. 390.

*Mr. Casper Dull*, for the defendant in error:

Does not the whole matter, after considering the verdict of the jury and the opinion of the court below, resolve itself into the following question: Is it the policy of the law to encourage friendly relation between step-parents and step-children, founded

upon mutual respect and love ?   The relation commonly known as step-parent and step-child has in many cases been recognized as included in the family ties : Williams v. Hutchinson, 5 Barb. 122, affirmed in 3 Comst. 312, cited in Duffey v. Duffey, 44 Pa. 402.   That a parent has an interest in the life of a child, and, vice versa, a child in the life of a parent, is held, not merely on the ground of a provision of law that parents and grandparents, children and grandchildren are bound to support their lineal kindred when in need of relief, but upon considerations of strong morals, and the force of natural affection between near kindred, operating more efficaciously than those of a positive law: Loomis v. Eagle, 6 Gray 399.   " Policies of this nature are in no sense wagering.   It would be denying a man's right to do what he will with his own to say that he could not in any form insure his life for the benefit of an indigent relation, or a friend to whom he felt under obligations.   And the fact that he continues to pay the premium himself, and retains control of the policy up to the time of his death, leaves no room for speculation or improper practices which a few years ago brought such a scandal upon the life insurance business in this state : " Scott v. Dickson, 108 Pa. 13.

OPINION, MR. JUSTICE CLARK :

This suit was brought on a policy of life insurance, issued by the U. B. Mutual Aid Society, etc., March 22, 1882, upon the life of Roger McDevitt.   The application for the policy provided that " the certificate of membership should be issued in favor of and be payable to Michael McDonald," who was " to pay all dues and assessments."   The policy itself, after stating that Mr. Roger McDevitt " had paid $24 as his annual payment" and had become a member in said U. B. Mutual Aid Society of Pennsylvania, etc., provides that " this membership entitles Michael McDonald, his heirs and assigns, upon the death of said Mr. Roger McDevitt to $3,000."   Had Michael McDonald such an interest in the life of Roger McDevitt as would support the policy ?

It cannot be pretended that the mere fact that McDonald was a step-son of McDevitt would create an insurable interest ; no case has been brought to our notice which carries the rule to that extent.   It is a rule founded in public policy, and is of

general application, that the contract of life insurance must be based upon an interest in the subject insured; in the absence of an insurable interest the policy, having nothing upon which to operate, must be regarded as a mere wager upon human life. In all cases, as we said in Corson's Appeal, 113 Pa. 445, there must be a reasonable ground, founded in the relations of the parties, either pecuniary or of blood or affinity, to expect some relief or advantage from the continuance of the life of the insured; otherwise the contract is a mere wager by which the party taking the policy is directly interested in the early death of the assured. Such policies having a tendency to create a desire for the event are, independently of any statute on the subject, condemned as being against public policy. The foundation of the doctrine is that no one shall have a benefit of any kind in a life policy, who is not presumed to be interested in the preservation of the life of the insured: Gilbert v. Moose, 104 Pa. 78.

Roger McDevitt was married to McDonald's mother, but she had died some years before the policy issued. McDonald was a married man; he had a separate home and family of his own; he was a step-son but was not otherwise related to McDevitt, either by blood or marriage. Nor was he a creditor of McDevitt or in any way dependent upon him or responsible for his support or otherwise. The plaintiff testifies they had helped each other at times but that McDevitt owed him nothing; he says that he had a stroke of paralysis, and his wife got him to take out the policy to protect her if he died; she thought he was likely to die first, but it was for the benefit of whichever lived the longest. And although the policy states that the first annual payment of $24 was paid by McDevitt, the plaintiff unequivocally testified that he paid all the money that was paid on it. It is very plain from all the testimony that McDevitt simply suffered the use of his name; that the insurance was effected at the suggestion of McDonald or McDonald's wife, at their own expense, for their exclusive benefit. We fail to discover any insurable interest Michael McDonald had in the life of Roger McDevitt, there is, therefore, nothing to support the policy.

It is the absence of this insurable interest which gives to the policy the character of a wager contract; there can arise in

such case no question of motive or good faith: Downey v. Hoffer, 110 Pa. 109. The rule, applicable alike to life and fire insurance, rests in public policy for the protection of human life and property: Stoner v. Line, 16 W. N. 187; Keystone Mut. B. Ass'n v. Norris, 115 Pa. 446. The motive and intentions of Michael McDonald may have been good, but the fact remains that he had no interest in the life of Roger McDevitt, and having no such interest, as we said in Seigrist v. Schmoltz, 113 Pa. 326, the sooner that life was extinguished the better it was, in a pecuniary point of view, for the beneficiary. Whether the policy was taken out for the purpose of a wager or speculation, that is to say whether or not this was the motive and intention of the beneficiary named in it, under the circumstances of this case, was not a question for the jury; in the absence of any insurable interest whatever the law will presume this to be so.

The judgment is reversed.