# Tagert *v.* The State.

## *Indictment for Incest.*

1. *Incest; when marriage or sexual commerce between stepfather and stepdaughter is.*—Living issue of the marriage, at the time of the death of the wife, continues the affinity between the husband and her blood relations; and marriage or sexual commerce between the husband and his step-daughter, after the death of the wife, and during the life of such issue, is incest.

2. *Evidence; anger or surprise, when admissible.*—A witness may testify that the accused appeared to be angry or surprised; or to the negative when the circumstances are such as would naturally produce anger or surprise.

3. *Same.*—The answer to the question, "Whether the defendant showed signs of surprise or anger," that the defendant "Showed no signs of anger or surprise, but was the coolest man I ever saw under like circumstances," is legal and competent, in so far as it is responsive to the question, and a motion to exclude the whole is not the proper way to eliminate so much thereof as is incompetent.

4. *Same; when secondary evidence, contents of note not admissible.* The loss or absence of a note is not sufficiently accounted for, in order to allow secondary evidence of its contents, when witness testified that, "I have not made any special search for this note."

5. *Same; when incompetent.*—The question, "Do you not know that persons suffering from headache frequently lie down in darkened rooms for relief from headache," held to be incompetent.

APPEAL from the Criminal Court of Jefferson.

Tried before Hon. S. L. WEAVER.

The appellant, John William Tagert, was indicted, tried and convicted of incest in February, 1905 The evidence on the trial showed that the defendant Tagert married the mother of the woman, Maud Alice Freeland, with whom he is alleged to have committed the incest, and that by said marriage he had one child, living at the time of the death of his wife, and at the time the offense was alleged to have been committed.

The State introduced a witness, Dicia Baker, who testified that she was a practicing physician in the city of Birmingham; that defendant brought Maud Alice Freeland to her for treatment, and that she told defendant that Maud Alice Freeland was pregnant. The solicitor then asked the question: "State what was the manner of the defendant when you told him of the girl's condition, whether he showed surprise or anger?" The defendant objected the court overruled the objection, and the defendant duly excepted. The witness then answered, "Mr. Tagert showed no signs of anger or surprise, but was the coolest man I ever saw under like circumstances, and I have seen several parents under like circumstances." The defendant objected to the answer and moved to exclude it. The court overruled the objection and the defendant duly excepted.

The State introduced a witness, Willie Griffin, who testified as follows: "I am a prisoner confined in the Jefferson county jail, and was such prisoner during the summer of 1904. I am acquainted with Mr. Tagert and Miss Maud Alice Freeland. I remember on one occasion that Mr. Tagert threw out through the bars of the jail to me in the jail yard below a shirt to be laundried by me, and said to me that I would find a note in the pocket of the shirt. I looked in the pocket and found a note, which has since been lost, misplaced or destroyed, though I cannot say when it was lost, misplaced or destroyed, nor just where it was kept by me. I had a whole lot of letters or notes that were up stairs in the jail with

me, and a lot of them were thrown out and destroyed only yesterday, but I have not made any special search for this note." The Solicitor then asked the question: "What did this note say?" The defendant objected to the question, the court overruled the objection and the defendant duly excepted.

The State's witness, Daisy Hill, testified that she kept house for defendant about ten days in April, 1904; that defendant worked at night and slept in the day time; that on one occasion, in the morning, Maud Alice Free-land complained of a headache and went into defendant's room, the room being darkened, and remained in there for several hours; that witness did not know of any improper acts during her stay in the room with defendant. The defendant then asked the witness the following question: "Do you not know that persons suffering from headache frequently lie down in darkened rooms for relief from headache?" The State objected to the question, which objection was sustained by the court, the defendant reserving an exception to the court's ruling.

There was other evidence introduced by the State tending to show sexual commerce between the defendant and Maud Alice Freeland.

When the State rested its case, the defendant did not offer any testimony, but made the following motions: 1st, the defendant moves the court to exclude all evidence offered by the State upon the trial; 2nd, the defendant moves the court to discharge the defendant from further custody. Both of these motions were overruled by the court, to which the defendant duly excepted.

DILL & ALLEN, for appellant.

MASSEY WILSON, Attorney-General, for the State.

TYSON, J.—"Incest," says Mr. Bishop, "where the statutes have not modified its meaning, is sexual commerce, either habitual or in a single instance, and either under a form of marriage or without it, between persons too nearly related in consanguinity or affinity to be

entitled to intermarry."—Bishop on Statutory Crimes,
§ 727.

Section 4889 of the Criminal Code reads as follows:
"If any man or woman, being within the degrees of con-
sanguinity or relationship within which marriages are
declared by law to be incestuous and void, and knowing
of such consanguinity or relationship, intermarry, or
have sexual intercourse together, or live together in adul-
tery, each of them must, on conviction, be imprisoned
in the penitentiary for not less than one, nor more than
seven years."

The degrees of consanguinity or relationship within
which marriages are declared incestuous are fixed by
section 2837 of the Civil Code. One of these degrees is,
as known in common parlance, that of step-father and
step-daughter. The language is that "No man shall
marry the daughter of his wife."

It cannot be seriously doubted that the relation of
consanguinity or affinity between the parties must exist
at the time the act of intermarrying or sexual inter-
course occurs. If the relationship, previous to the act
of marrying or sexual commerce takes place, has ceased
to exist, then the act of intermarrying or sexual inter-
course is not incestuous, however offensive it may appear
to good morals or punishable as a crime under other
criminal statutes.

In the present case, it appears that, at the time of the
sexual act or acts between the defendant and the woman,
Maud Alice Freeland, the mother of Maud was dead.
That, at the date of her death, she was the wife of de-
fendant and left surviving her a child or children, issue
of their marriage, who are now living. The point is
made that, upon the death of the wife and mother, the re-
lation of affinity between defendant and Maud was dis-
solved.

It must be admitted that the case of *Johnson v. State,*
(20 Tex. App. 609) which arose under statutes very sim-
ilar to ours, fully sustains the contention. In that case,
as here, it appeared that issue of the marriage survived
the wife and were living at the time the sexual inter-
course was had between the step-father and his step-

daughter. But the court either overlooked this fact or regarded it as of no importance.

Since the decision of *Mounson v. West*, (1 Leonard 88) by the Court of Common Pleas of England, during the reign of Elizabeth, it has been regarded as settled, by some of the ablest courts in this country, that, after the death of the wife, living issue of the marriage continues the affinity between the husband and her blood relations.—*Jaques v. Commonwealth*, 10 Gratt, 690; *Dearmond v. Dearmond*, 10 Ind. 191; *Bigelow v. Sprague*, 140 Mass. 425. See also cases collected in note to *Chinn v. State*, 11 L. R. A. p. 630.

This principle was recognized by this court in *Pegues v. Baker*, 110 Ala. 251, 254.

It must be now regarded as finally settled by this Court that a witness may testify that the accused appeared to be angry or surprised.—*Hainsworth v. State*, 136 Ala. 13; *Thornton v. State*, 113 Ala. 43. It is true this is an affirmative statement by the witness of the facial expression of the accused as it appeared to him, but there is no good reason why the negative of the proposition may not be testified to, when the circumstances are such as would naturally produce anger or surprise and no sign or indication of either is shown by the accused. The question propounded to Dr. Baker, under the circumstances shown by him, was competent. So also was that portion of his answer responsive to the question competent and legal. If it be conceded that the other part of his answer, which was not responsive to the question, was incompetent, the motion to exclude the whole of his answer was not the proper way to eliminate it.—*Davis v. State*, 131 Ala. 10.

The objection to the question propounded to witness Griffin, calling for the contents of the note, on the ground that its loss or absence had not been sufficiently proven or accounted for to allow secondary evidence of its contents, should have been sustained. *Non constat,* this paper was not among those that had been destroyed by the witness—no search being made for it among those not destroyed. There is no merit in the other objections to this testimony.

The question to Mrs. Hill to which objection was sustained was clearly not competent.

Reversed and remanded.

McCLELLAN, C. J., SIMPSON and ANDERSON, J.J., concurring.