REACKE BACK, Appellant, v. AMIEL J. BACK, Executor of the Estate of WILLIAM BACK, Deceased.

**Pleadings:** EFFECT OF ADVERSE RULING ON DEMURRER. Pleading over after an adverse ruling on demurrer is not, under our present statute, a waiver of the right to subsequently raise the same questions in some other manner.

**Marriage and divorce:** RELATIONSHIP BY AFFINITY: TERMINATION.
2 Relationship by affinity terminates by the termination of the marriage which gave rise to the relationship, when it occurs either by death or divorce. So that the marriage of a man to the daughter of his divorced wife by a former marriage is not invalid, because within the prohibited degrees of affinity as defined by Code, section 4936.

*Appeal from Ida District Court.*—HON. Z. A. CHURCH, Judge.

SATURDAY, APRIL 9, 1910.

IN a probate proceeding for the settlement of the estate of William Back, deceased, plaintiff alleged that she was the widow of the decedent, and asked an order directing the executor to turn over and deliver to her all his exempt personal property. Issue being joined as to whether the plaintiff was the widow of decedent, the court made a specific finding that plaintiff never was the legal wife of said decedent, and was never legally married to him, and therefore dismissed plaintiff's application and entered judgment for the defendant for costs. From this judgment, the plaintiff appeals.—*Reversed.*

*J. B. Tourgee* and *Johnston Bros.,* for appellant.

*M. M. White* and *W. A. Helsell,* for appellee.

McCLAIN, J.—The facts out of which this controversy arises are not in dispute, being settled by stipulation of the parties appearing in the record. So far as we deem them material to a disposition of the case, they are as follows: In 1890, William Back, the decedent, married a widow, one Mrs. Dirke, who then had living a daughter by her former husband. The daughter is the plaintiff in this case. In 1900, the wife obtained a divorce from said William

Back, and four years later he married the plaintiff. No children were born to William Back by his first marriage, but as a result of his marriage to plaintiff four children were born, all of whom survive him. About two years after the second marriage the divorced wife, mother of the plaintiff, died, and thereafter plaintiff and the decedent continued to live together as husband and wife until his death in 1906. The resistance of defendant to plaintiff's application as widow to have the exempt property set apart to her was on the ground that the marriage was incestuous and void under the provisions of Code, section 4936, which within the definition of "incest" includes marriage between a man and his wife's daughter, and prohibits such marriage. The trial court ruled throughout that, notwithstanding the termination by divorce of the marriage between decedent and plaintiff's mother before the marriage of decedent to this plaintiff, plaintiff continued to be decedent's wife's daughter within the statutory definition, and that the marriage to plaintiff was void in its inception and continued to be void after the death of plaintiff's mother and until the death of decedent, and that, therefore, plaintiff is not the widow of decedent. Before reaching the question as to the correctness of this ruling of the trial court, it will be necessary, however, to pass on a question of practice for the purpose of determining whether such ruling is properly before us for review.

I. Defendant's answer fully set out the facts on which was based the claim that the marriage of decedent to this plaintiff was void, and the demurrer of plaintiff to such answer distinctly raised the question whether it was prohibited under the statute already referred to. This demurrer was overruled, and the plaintiff by standing on her demurrer and submitting to judgment might on appeal have had that question adjudicated in this court. Had she done so, a decision in this court affirming the ruling on the demurrer

1. PLEADINGS: effect of adverse ruling on demurrer.

would have concluded the controversy, and plaintiff would
have had no opportunity to raise any other questions of
law or fact in the case.   She evidently desired, however, to
raise other issues and have them adjudicated, and therefore,
instead of standing upon her demurrer, she filed a reply
in the first division of which she alleged the same facts as
to the marriage of decedent to Mrs. Dirke, the procuring
of a divorce by her from him, and the second marriage
of decedent to this plaintiff, no issue having resulted from
the former marriage, as fully as such facts had been already
stated in defendant's answer, but with the legal conclusion
that she was the due and legal wife of decedent, and
entitled to participate as his widow in the estate of said
decedent, and in other divisions of her reply she alleged
facts relied upon as constituting an estoppel of defendant
to assert the invalidity of the marriage.   Thereupon the
defendant demurred to each division of the reply, challeng-
ing the sufficiency of the facts pleaded in the first division
thereof as constituting a sufficient reply to defendant's
answer for various reasons, one of which was that the facts
so alleged were fully set out in the answer to which the
reply was filed, and had been held sufficient as a defense
by the ruling on the demurrer thereto.   This demurrer of
defendant to plaintiff's reply was sustained.   Thereupon
the case came on for trial on the issue arising as to the
truth of the facts alleged in defendant's answer which
were by our rules of pleading deemed denied by operation
of law.   By stipulation the plaintiff admitted the facts to
be as alleged in defendant's answer, but objected to their be-
ing considered in evidence, for the reason substantially that
they did not tend to show the invalidity of the marriage
between plaintiff and decedent; and this objection was
by the court overruled.   Thereupon plaintiff offered evi-
dence by way of stipulation as to the facts tending to
support the allegations of her reply in estoppel, to the
consideration of which defendant objected on the ground

that such facts did not tend to support any issue in the case, and this objection was by the court sustained. The court then sustained a motion for defendant on the record to render judgment in his favor for costs, and entered a judgment to that effect, in which it was recited that plaintiff never was the legal wife of decedent, and was not entitled to recover under the law as his widow and dismissed plaintiff's application.

The contention of appellee now is that appellant by filing the reply after her demurrer to the answer had been sustained waived any error in such ruling, and can not now rely upon such alleged error as a ground for reversal. The rule which was well established by earlier decisions of this court, to the effect that, by amending or pleading over after a ruling on a demurrer, the unsuccessful party waived any error in such ruling, had the manifest result of depriving him of an opportunity to insist upon an error of law committed in a ruling on a demurrer if he by amendment stating additional facts relied upon as constituting a cause of action, or by pleading additional matters of defense or reply, sought to raise other issues than those arising on the pleadings as they stood at the time the ruling against him on demurrer was made. For instance, the defendant could not question the legal sufficiency of the allegations of plaintiff's petition, and also question their truth. If he demurred to their sufficiency, and his demurrer was overruled, and standing on his demurrer judgment was entered against him, he could not afterward, when by appeal it had been determined that the ruling on demurrer was correct, get back into court for the purpose of contesting the truth of the allegations; while, on the other hand, if he relied subsequently on a denial of the truth of the allegations and went to issue on the facts, he could not on appeal question the correctness of the ruling on the demurrer, for any error in such ruling would have been waived by pleading over. By amendatory legislation incorporated now into Code,

section 3564, it was the evident purpose of the Legislature to abolish this rule so inconsistent with our system of pleading, by which either party is allowed to raise every issue of law and fact inhering in the case, and to have every ruling prejudicial to him reviewed on appeal. By that section it is provided that a ruling on demurrer shall not be considered as an adjudication of any question raised by the demurrer and the sufficiency of the pleading may thereafter be determined as if no demurrer had been filed, and no pleading shall be held sufficient on account of a failure to demur thereto. Under these provisions, it has been repeatedly held that a ruling on demurrer does not become the law of the case, and the same question may be raised at subsequent stages of the procedure as though no such ruling had been made. *Marshall Ice Co. v: La Plant,* 136 Iowa, 621; *Watkins v. Iowa Cent. R. Co.,* 123 Iowa, 390. There seems to be no difficulty in holding in this case that the plaintiff subsequently raised the same question which was raised by the demurrer to the answer. She objected to the evidence tending to substantiate the allegations of the answer on the ground that the facts did not constitute any defense, and she excepted to the judgment in which the court specifically found that they did constitute a defense. Under repeated decisions of this court, it is the established rule following the statutory provisions above referred to that pleading over after ruling on demurrer does not waive the right to raise the same objection in some other manner. *McClain v. Capper,* 98 Iowa, 145; *Geiser Mfg. Co. v. Krogman,* 111 Iowa, 503. We reach the conclusion that plaintiff is not precluded from relying in this appeal on the insufficiency of the allegations of defendant's answer to constitute a defense.

II. The provision of the statute relied upon for defendant as rendering plaintiff's marriage to decedent void is in full as follows: "If any man marry his father's sister, mother's sister, father's widow, wife's mother, daughter,

wife's daughter, son's widow, sister, son's daughter, daughter's daughter, son's son's widow, daughter's son's widow, brother's daughter or sister's daughter; or if any woman marry her father's brother, mother's brother, mother's husband, husband's father's son, husband's son, daughter's husband, brother, son's son, daughter's son, son's daughter's husband, daughter's daughter's husband, brother's son or sister's son; or if any person, being within the degree of consanguinity or affinity in which marriages are prohibited by this section, carnally know each other, they shall be guilty of incest, and imprisoned in the penitentiary not exceeding ten years nor less than one year." Code, section 4936. It will be noticed that this is a penal statute, the primary purpose of which is to provide a punishment for marrying a person related within specified degrees of consanguinity or affinity, or carnal knowledge between persons related in such degrees. It does not purport to declare the status of persons who marry within the prohibited degrees, but by Code, section 3182, it is provided that a marriage may be annulled by a proceeding in court if it is between parties whose marriage is prohibited by law, and the only corresponding prohibition is that found in the criminal statute above quoted.

*2. MARRIAGE AND DIVORCE: relationship by affinity: termination.*

We shall not stop now to discuss the question whether a marriage between parties within the prohibited degrees of consanguinity or affinity is void or voidable only, but proceed at once to determine whether the marriage of plaintiff to decedent was within any of the prohibitions of Code, section 4936, and the determination of this question depends upon the construction of the words "wife's daughter" in that section. As the statute is penal, it should not be applied to any case which does not fall both within its letter and its spirit; and this rule of construction must evidently be followed for the purpose of determining the validity of a marriage, which it is contended is invalid

because the parties to it are within the prohibited degrees of relationship. If the statute purported to be a definition only of degrees of relationship within which marriage is prohibited, it might perhaps be argued with some plausibility that, as a man could not marry his wife's daughter while his wife was living and undivorced without committing bigamy, the object of including wife's daughter among those to whom a marriage is declared invalid was to prohibit such marriage after the death or divorce of the mother of such daughter; but, as the primary purpose of the statute apparent on its face is to punish carnal knowledge as between persons having the specified relationships as well as to punish marriage between them, it is quite evident that the enumeration of relationships is simply a method of stating more definitely what are the degrees of consanguinity or affinity rendering marriage or carnal knowledge between persons of the relationships named criminal. This is quite evident from the conclusion of the section which refers to the relationships named as being "degrees of consanguinity or affinity." Therefore, in determining the construction to be put upon the words "wife's daughter," we are required to determine their meaning as defining a degree of relationship by affinity between the parties. *Blodget v. Brinsmaid,* 9 Vt. 27; *Noble v. State,* 22 Ohio St. 541; *State v. Brown,* 47 Ohio St. 102 (23 N. E. 747, 21 Am. St. Rep. 790); *Wilson v. State,* 100 Tenn. 596 (46 S. W. 451, 66 Am. St. Rep. 789); *Johnson v. State,* 20 Tex. App. 609 (54 Am. Rep. 535); *Pegues v. Baker,* 110 Ala. 251 (17 South 943); *Tagert v. State,* 143 Ala. 88 (39 South. 293, 111 Am. St. Rep. 17); *Bigelow v. Sprague,* 140 Mass. 425 (5 N. E. 144); *Vannoy v. Givens,* 23 N. J. Law, 201; 1 Bishop, New Crim. Procedure, section 901; 26 Cyc. 845. Of the cases cited those from Texas, Alabama and Ohio are directly in point as relating to a marriage between a man and the daughter of a former wife deceased or divorced, and the

only discrepancy between them is that in the Alabama cases a modification of the rule is insisted upon, by which the relationship of affinity is held to continue after the dissolution of the marriage if and so long as there is surviving issue of such marriage. This qualification is suggested also in some of the other cases, but, as it appears in the case before us there was no issue of the former marriage between decedent and plaintiff's mother, the question need not now be determined.

We reach the conclusion, therefore, that the relationship of affinity between the decedent and plaintiff which existed during the continuance of the marriage relation between decedent and plaintiff's mother terminated when the latter procured a divorce from decedent, and after that time plaintiff was not the daughter of decedent's wife, and the marriage between them was valid.

This conclusion renders it unnecessary to determine the sufficiency of the allegations of matters in estoppel found in plaintiff's reply which were held to be insufficient by the lower court on demurrer.

The judgment of the trial court is *reversed.*