### STEELE v. SUWALSKI et al.

#### No. 5367.

Circuit Court of Appeals, Seventh Circuit.

March 8, 1935.

Frank B. Keefe and W. Mead Stillman, both of Oshkosh, Wis., for appellant.

J. J. McManamy, Stanley M. Ryan, and Harold E. Hanson, all of Madison, Wis., for appellees.

Before EVANS, SPARKS, and FITZ-HENRY, Circuit Judges.

FITZHENRY, Circuit Judge.

This is an appeal from a judgment in favor of appellee, Grace Suwalski, entered in an action brought to recover the commuted value of unpaid installments of a war risk insurance policy. Trial by jury was waived and the facts were stipulated by the parties.

Appellee, Grace Suwalski, is the widow of F. A. Suwalski. They were married on March 29, 1903, and F. A. Suwalski died January 4, 1918. Andrew Suwalski was the father of appellee's deceased husband and Alfred Andrew Suwalski, the insured, who was killed on the field of battle in October, 1918. Appellant is the administrator of the estate of Alfred Andrew Suwalski. All of the members of the Suwalski family, which consisted of Andrew Suwalski and his wife, F. A. Suwalski and his wife, and the insured, lived together in one home at Ripon, Wis. The mother of F. A. and Alfred Andrew died before the insured entered the service, in May, 1918.

On May 31, 1918, there was issued to the soldier a war risk insurance policy for $10,000. The beneficiary named therein was his father, Andrew Suwalski. He attempted to designate the father and sister-in-law, Grace Suwalski, as beneficiaries, but was advised that she was not within the then permitted class of beneficiaries. The soldier wrote a letter to appellee which is the basis of the present claim and reads:

"With the Colors

"(Cut of Flag)         YMCA

"Spartansburg, S. C. June 11, 1918.

"Dear Grace:

"The first breathing spell I have had since I arrived yesterday P. M. and must say that I am more than pleased with the change. They treat one like a human being and that is much more than I can say for Jefferson Barracks. Wish I was home so that I could tell you about it. I sure was some discouraged down in St. Louis and so was every other fellow but the change is so pronounced that we all feel fine and everything. If you folks want me to write real often you can remember to stick in a postage stamp now and then as you will realize that postage is going to be some item with yours truly but I am sure I will manage to get by. Made arrangements for the allotment but could only get twenty five dollars but I think that is all OK and what you do not use you can put in a Savings Account. It will start in July so they tell me. Now about the Insurance. I wanted it made out to you and pa but they said it had to be made out to a blood relative but Grace I want you and pa to understand that if anything should happen to me I want the 57/50 per month to go to pa & you share and share alike. That is as I want it and you can keep this letter. Should anything happen to either one of you two then I want the whole 57/50 to go to the other one. This is the best I can do. The check will come to you every month for twenty years should anything happen to me. So I don't see how you folks need worry. Well so much for that, and believe me I am glad to get it out of my system. When you write home remember me to the folks and say I sure am happy and satisfied. It is rumored that we will be here at least 72 days so if I get a chance I may run home. So much for this time and next time I will have more to say about work. With love to all.

"Alfred."

By the act of Congress the War Risk Insurance Act (section 402, 40 Stat. 409, as amended by Act June 25, 1918, § 21, 40 Stat. 615) was amended on December 24, 1919 (41 Stat. 375, § 13), so as to have retroactive effect to 1917, extending the benefits of war risk insurance to brothers-in-law and sisters-in-law.

The soldier died intestate on October 7, 1918, and the insurance was awarded to his father, Andrew Suwalski. He died on November 27, 1930, and on December 10, 1930, Grace Suwalski sent the soldier's letter of June 11, 1918, to the Veterans' Bureau, claiming that it designated her as a cobeneficiary and residuary beneficiary under the policy. Her claim was denied, the Bureau having determined that the value of the remaining unpaid installments should be paid to the personal representative of the deceased veteran. Appellee then brought this action.

After the soldier's death the father lived, with the exception of a few months, with appellee. She continued to make a home for him and provided for his care and comfort until his death. The family relationship never changed during the life of the soldier and his father and this, in all probability, was the reason for the soldier's desire to make the father and his sister-in-law co-beneficiaries in his insurance policy. That designation having been declined by the government, the father was named, and the letter of June 11, 1918, to appellee, was written by the soldier, acknowledging that, notwithstanding the fact that appellee's husband was dead, her relation to her husband's family remained unchanged, in point of fact at least.

Appellant summarized his position upon this appeal as follows:

"(1) That Grace Suwalski was related by affinity during the lifetime of her husband, to Alfred Andrew Suwalski, but that upon the death of her husband, Frank Suwalski, the relationship by affinity ceased, because the marriage ceased, no issue having been born or surviving.

"(2) That the act clearly intends that a sister-in-law named as beneficiary must, at the time of the designation have that status in order to be an eligible claimant to the fund. That at some previous time she had the status and lost the same before the attempted designation, does not give her any status whatsoever under the act, because of the provisions of the third paragraph of section 511, title 38 USCA.

"(3) That the construction claimed by Grace Suwalski is contrary to the clear wording of the act and the announced purpose of Congress, namely—that the act was intended to benefit the *dependents* of the veteran, and Grace Suwalski, having no claim in law or as a natural object of the veteran's bounty to dependency, any recognition of her claim would be a clear violation of the expressed purposes of the act."

Was appellee, Grace Suwalski, the sister-in-law of the assured, within the meaning of the War Risk Insurance Act, on the date when the application for insurance was made or on any date subsequent thereto?

While the point does not seem to have been raised in any reported cases in the federal courts, there are many decisions of the state courts to the effect that the relation of brother-in-law and sister-in-law, being one of affinity, the death of a spouse, or divorce, terminates the affinity relationship where there is no surviving issue. Most of these cases have arisen under the statutes defining the crime of incest or where the fact of relationship has been raised to disqualify a judge or juryman. Blodget v. Brinsmaid, 9 Vt. 27; Carman v. Newell, 1 Denio (N. Y.) 25; Cain v. Ingham, 7 Cow. (N. Y.) 478; State v. Brown, 47 Ohio St. 102, 23 N. E. 747, 21 Am. St. Rep. 790; Noble v. State, 22 Ohio St. 541; Wilson v. State, 100 Tenn. 596, 46 S. W. 451, 66 Am. St. Rep. 789; Paddock v. Wells, 2 Barb. Ch. (N. Y.) 331; Dearmond v. Dearmond, 10 Ind. 191; State v. Shaw, 25 N. C. 532; Ehrhardt v. Breeland, 57 S. C. 142, 35 S. E. 537; Yerby v. Martin (Tex. Civ. App.) 38 S. W. 541; Tagert v. State, 143 Ala. 88, 39 So. 293, 111 Am. St. Rep. 17; Pegues v. Baker, 110 Ala. 251, 17 So. 943; Johnson v. State, 20 Tex. App. 609, 54 Am. Rep. 535; Miller v. State, 97 Ga. 653, 25 S. E. 366; Stringfellow v. State, 42 Tex. Cr. R. 588, 61 S. W. 719; Back v. Back, 148 Iowa, 223, 125 N. W. 1009, L. R. A. 1916C, 752, Ann. Cas. 1912B, 1025; Walsingham v. State, 61 Fla. 67, 56 So. 195; Garner v. State, 6 Ga. App. 788, 65 S. E. 842; Harnage v. State, 7 Ga. App. 573, 67 S. E. 694; Gillespie v. State, 168 Ind. 298, 80 N. E. 829; Winchester v. Hinsdale, 12 Conn. 88; Parks v. Citizens Bank of Valdosta, 40 Ga. App. 523, 150 S. E. 438; Crosby v. State, 90 Fla. 381, 106 So. 741, 744; Wilbe Lumber Co. v. Calhoun, 163 Miss. 80, 140 So. 680; Shamberger v. State, 221 Ala. 538, 130 So. 70.

In the following cases this rule was applied in an action on an insurance policy: Morey v. Monk, 145 Ala. 301, 40 So. 411; Allen v. Cunningham, 143 Tenn. 11, 223 S. W. 450.

That the relationship by affinity has not usually been regarded as terminated by the

death of the spouse or the divorce of the parties to the marriage out of which the affinity relationship arose *where the construction of an insurance policy was before the court* is shown by the following cases: Young v. Hipple, 273 Pa. 439, 117 A. 185, 25 A. L. R. 1541; Murdock v. Murdock, 7 Cal. 511; Anderson v. Royal League, 130 Minn. 416, 153 N. W. 853, L. R. A. 1916B, 901, Ann. Cas. 1917C, 691; Hunt v. Winkleman, 136 Md. 250, 110 A. 490; United Brethren Mutual Aid Society of Pennsylvania v. McDonald, 122 Pa. 324, 15 A. 439, 1 L. R. A. 238, 9 Am. St. Rep. 111; Adams v. Reed (Ky.) 38 S. W. 420, 35 L. R. A. 692; Hummel v. Supreme Conclave Improved Order Heptasophs, 256 Pa. 164, 100 A. 589; Bennett v. Van Riper, 47 N. J. Eq. 563, 22 A. 1055, 14 L. R. A. 342, 24 Am. St. Rep. 416; Tolson v. National Provident Union, 60 Misc. 460, 113 N. Y. S. 534; Faxon v. Grand Lodge B. of L. F., 87 Ill. App. 262.

The leading case to the effect that relationships by affinity are not terminated by the dissolution of the marriage which created them, either by divorce or death of one of the parties, is that of Spear v. Robinson, 29 Me. 531. In that case it was held: "By the marriage, one party thereto holds by affinity the same relation to the kindred of the other, that the latter holds by consanguinity. And no rule is known to us, under which the relation by affinity is lost on a dissolution of the marriage, more than that by blood is lost by the death of those, through whom it is derived; the dissolution of a marriage, once lawful, by death or divorce, has no effect upon the issue, and it is apprehended, it can have no greater operation to annul the relation by affinity, which it produced."

This case was followed in Simcoke v. Grand Lodge A. O. U. W. of Iowa, 84 Iowa, 383, 51 N. W. 8, 15 L. R. A. 114, where, in a suit upon an insurance policy, it was held that a stepfather is a relative by affinity and the relationship continues after the death of the wife, on whom the relationship depends.

■ Whether or not death or divorce, in the absence of children, terminates a relationship by affinity, is a matter of local law, as an examination of the authorities above cited will clearly establish. Both the soldier and appellee were citizens and residents of the state of Wisconsin, and neither death nor divorce, even though there were no children, terminates the relationship by affinity in the state of Wisconsin. Renner v. Supreme Lodge of Bohemian Slavonian Benevolent Society of United States, 89 Wis. 401, 62 N. W. 80; Jones v. Mangan, 151 Wis. 215, 138 N. W. 618, Ann. Cas. 1914B, 59. In the latter case the constitution of a firemen's relief association provided for payment of insurance to the beneficiary named in the membership certificate, "provided that such beneficiary be either widow, child or children, mother or father, sister or brother, niece or nephew, of such deceased member." The court held that a stepmother of a member was his "mother" within the meaning of the clause and might properly be named as a beneficiary where he resided in, and was a member of, her family, although the father predeceased assured and the stepmother had married again.

We are construing a term, the legal effect of which varies somewhat in different states. The construction is naturally more restricted in criminal cases than in insurance cases. In respect to the former, the rule of construction is strict. In insurance cases, where a benevolent and worthy purpose is to be accomplished, a construction consistent with such purpose calls for a more liberal definition of the term.

■ Where the relationship by affinity is in fact, as it was in this case, continued beyond the death of one of the parties to the marriage which created the relationship, and where the parties continue to maintain the same family ties and relationships, considering themselves morally bound to care for each other, the District Court properly found that the relationship continued to exist and that appellee, in this case, was the sister-in-law of the deceased veteran within the meaning of .38 USCA § 511. As was so aptly stated in the case of Bennett v. Van Riper, 47 N. J. Eq. 563, 22 A. 1055, 1056, 14 L. R. A. 342, 24 Am. St. Rep. 416: "The ties of affinity are often stronger than those between collateral, or even lineal, kinsmen by blood; and there is nothing unreasonable in saying that this certificate was made payable to one whom the holder supposed was properly classed among his relatives, and that the council so intended. Where there is no fixed legal or technical meaning which the court must follow in the construction of a contract, then 'the best construction,' says Chief Justice Gibson, 'is that which is made by viewing the subject of the contract as the mass of mankind would view it; for it may be

safely assumed that such was the aspect in which the parties themselves viewed it. A result thus obtained is exactly what is obtained from the cardinal rule of intention.' Schuylkill Nav. Co. v. Moore, 2 Whart. [(Pa.) 477] 491. It seems that the objects of this association will be best attained by the adoption of a common, though it may be an inexact, interpretation of the words 'related to' as used in the article above referred to, rather than by a restricted meaning that may not have been known, and is certain to defeat the purpose of this deceased member; and that no rule of legal construction will be violated by giving it such meaning." See, also, Hunt v. Winkleman, 136 Md. 250, 110 A. 490.

In common usage we frequently hear the term "brother-in-law" or "sister-in-law" applied to a person whose marriage has been dissolved by death or divorce. Such a relationship by affinity, once created, is not generally regarded as terminated by the death of one of the parties to the marriage or by a divorce. Nor have lexicographers recognized that the word has any such limited meaning. See Webster's New International Dictionary.

█ The question of the sufficiency of the notice to the Veterans' Bureau of a change of beneficiary must be decided favorably to appellee upon the authority of Claffy v. Forbes (D. C.) 280 F. 233. In that case the deceased soldier had addressed a letter to his mother and father in which he said: "* * * I have also made out a $10,000 life insurance to you. If I should be killed, it will be paid to you, $57.50 a month for 20 years, and I wish that if you should not live to get it all that you make it so that Agnes would get it." Agnes was the minor niece of the soldier. The court said:

"The intent to designate the niece as residuary beneficiary is explicitly established. Does the fact that the designation was by misapprehension of the laws sent to the mother, instead of the bureau, defeat the soldier's intent and right granted him under the insurance contract and law?

"This inquiry must be answered in the negative. Is the designation made in harmony with the regulations at the time it was received by the bureau sufficient? Yes."

It would be almost impossible for the soldier to have more persuasively demonstrated his intention to treat appellee as a sister-in-law, notwithstanding the fact that her husband was dead.

The District Court properly held that the insurance should be paid to the person so designated.

The judgment is affirmed.